# CHARLESTON.

## FRENCH v. McMILLION *et als.*

Submitted February 13, 1917.   Decided February 20, 1917.

1. DEED—*Contract—Merger in Deed.*

    Where a vendee of land, under a written contract of sale, subsequently procures a deed therefor to be executed to his wife, it will be presumed, in the absence of proof to the contrary, to have been executed in discharge of the contract which thereby becomes merged in the deed.   (p. 641).

2. CANCELLATION OF INSTRUMENTS—*Deeds—Contract of Sale.*

    A decree cancelling such deed for fraud in its procurement likewise annuls the contract of sale pursuant to which it was made.   (p. 641).

3. PARTITION—*Parties—Equitable Owner.*

    To authorize a party claiming only an equitable title to maintain a suit for partition, it is essential that his equity be complete,

such as entitles him to demand a conveyance of the legal title. (p. 642).

4. ESTOPPEL—*Warranty Deed—Heirs.*

A deed with covenants of general warranty, purporting to convey land in which the grantor has only a prospective inheritance, and to which he never becomes entitled because of his death within the lifetime of his ancestor, does not estop his children from asserting title as heirs of their grandparent. (p. 642).

5. SAME—*Execution of Deed—After-Acquired Title.*

A married woman living with her husband is not, nor is her heir estopped by her deed, or any covenant of warranty therein, from setting up against her grantee an after-acquired title. (p. 643).

Appeal from Circuit Court, Raleigh County.

Suit by G. T. French against Burnette McMillion and others. From decree for plaintiff, defendant McMillion appeals.

*Reversed, and bill dismissed.*

*J. E. Summerfield,* for appellant.

*C. M. Ward* and *A. P. Farley,* for appellee.

WILLIAMS, JUDGE:

From a decree partitioning a small tract of land among George T. French, the plaintiff, Burnette McMillion and the infant children of Floyd McMillion, deceased, the defendant Burnette McMillion has appealed, denying plaintiff's title to any interest in the land.

The tract was formerly owned by Sarah Daniel and contained 39½ acres. She conveyed away two small lots out of the tract, 1.24 acres to Amanda Clay and 1.75 acres to Victoria McMillion, which are not here involved. She, later, also conveyed a lot of 2 acres to Ellen McMillion, which was not partitioned, but title to which is involved, the court below holding plaintiff to be entitled to the entire lot.

Sarah Daniel was twice married. By her first husband she had two sons, Burnette McMillion and Floyd McMillion. The last named died in her lifetime leaving seven children, all of whom are infants. Sarah Daniels died in 1912 leaving the

aforesaid son and grandchildren as her only heirs at law, who claim, by inheritance from her, all the land that was partitioned. Plaintiff claims the one-half of it by virtue of a contract of sale executed by Sarah Daniel to her son Floyd McMillion on August 30, 1905, by which she, being then a widow, bound herself to make to him a deed, with general warranty of title, for said one-half interest. No deed was ever made to him, but defendants contend that, pursuant to that contract and at Floyd's request, she executed a deed to his wife Ellen McMillion, on September 18, 1905, and that the deed was afterwards set aside by decree of court, for fraud committed by Floyd McMillion in its procurement, and that the effect of the cancellation of the deed was the annullment also of the prior contract, it having been consummated and merged in the deed. The record discloses that such a decree was made on April 5, 1906, on full hearing in a suit brought for that purpose in November, 1905, by Sarah Daniel against her son Floyd McMillion and his wife. Neither the deed to Ellen McMillion nor the decree setting it aside mentions the contract of August 30, 1915, and plaintiff contends that it was not affected in any manner by the decree annulling the deed. That a contract of sale does become merged in a conveyance, executed in pursuance of it, to such an extent that the fate of the latter will determine its validity, is a principle too well settled to be questioned. The lesser equitable estate created by the contract is necessarily merged in, and swallowed up by the legal estate created by the deed.

Although it is not directly proven the deed to Ellen McMillion was made in pursuance of the contract with her husband, still it is a fact fairly and properly inferable, we think, from the facts proven, as shown by the record in the suit brought by Sarah Daniel to avoid the deed. A copy of that record is made a part of the record in this proceeding. Floyd McMillion and his wife were both parties defendant to that suit, and it appears that the fraud for which the deed was set aside was committed by Floyd himself. Mr. J. W. McCreery, who prepared the deed, testified in that case, and it appears from his deposition that Sarah Daniel, Floyd Mc-

Million and his wife came to his office, about the 9th of September, 1905; that Floyd explained to him what he wanted done and said, quoting witness' language: "produced a deed that he had the one-half interest in the land for which he was to get the description, and he told me what the contract was for the deed, and I recollect that he said he was to furnish his mother fuel and to take care of her." There being no evidence of any other contract than the one of August 30th, it must be presumed that it was the one there produced by Floyd McMillion, and that the deed to his wife was made in fulfillment of it.

On the 24th of December, 1906, after the aforesaid deed had been cancelled, plaintiff received a deed from Floyd McMillion and wife for the aforesaid half interest, the deed specifically referring to the contract of August 30, 1905, for description of the land intended to be conveyed. But in view of the merger of the contract in the deed to Floyd's wife, and the cancellation of the deed, he took nothing by that deed. Neither Floyd nor his wife was then seised of any interest in the land. In his amended and supplemental bill plaintiff avers that Floyd McMillion held a title bond from his mother for a one-half interest in the land, which was acknowledged on the 3rd of November, 1905, but the only contract exhibited in the record is the one of August 30, 1905. Moreover, defendant Burnette McMillion denies that any such title bond, as is described in the amended bill, ever existed, and no proof was taken to establish that fact.

But regardless of the merger of the contract and deed, plaintiff must fail, because of the lack of proof of a complete equity in Floyd McMillion. The consideration for the contract with his mother was one dollar and other valuable considerations, and it is not proven what they were or that they have been performed. Plaintiff acquired no higher right by his deed from Floyd McMillion and wife than his grantor had. In order to prevail he must show that his grantor had fully performed his contract, and was in position to demand a deed from Sarah Daniel. He has not even attempted to do so.

But it is further contended that plaintiff's title has become

perfect by estoppel; that Floyd McMillion having warranted generally the title to land, his children are estopped to claim title to it against his deed. This principle has no application. Floyd McMillion died before his mother Sarah Daniel died, and his children did not inherit the land from him, but inherited it directly from their grandmother. He was never at any time seised, having died before his mother, he never became her heir in fact. Hence his deed does not estop his children from claiming as heir directly from his mother, the portion he would have inherited if he had survived her.

After the conveyance to Ellen McMillion for the one-half interest had been set aside, Sarah Daniel, on 3rd December, 1907, granted to her two acres out of the 39½ acre tract. The court adjudged plaintiff to be the owner of this two acres. There being no other conveyance from Floyd McMillion and wife to plaintiff than the one heretofore mentioned, we are unable to perceive any ground for the holding, unless the chancellor was of the opinion that Ellen McMillion, although a married woman, was estopped by her deed or covenant of warranty to assert an after-acquired title to the same land, and that such estoppel would operate likewise upon her heirs. Even if the doctrine of estoppel by deed applied to a married woman, her deed did not purport to grant more than the undivided half of the land, and neither she nor her heirs would be thereby estopped to claim title to the other moiety. But, under the law of this state, a married woman is not estopped by her deed or any covenant of warranty therein from asserting an after-acquired title to the land conveyed. Counsel for plaintiff insist that *Buford* v. *Adair*, 43 W. Va. 211, holds otherwise. We do not so interpret that decision. Mrs. Buford's heirs were held to be estopped by her covenants of general warranty because at the time she executed the deed her husband was living separate and apart from her and in another state, which the court held effected a restoration of her rights as a feme sole, and made her covenants as binding as if she had been unmarried. The facts here are different. Mrs. McMillion was living with her husband and he joined in the execution of her deed. At the common law a married woman was incapable of contracting, and it is essential to estoppel

by deed that the party to be affected must have been *sui juris* when the deed was made. The statute, Ch. 66, Code of West Virginia, creating separate estates and empowering married women to contract with reference thereto, and to convey the same, prescribes a form or method which must be followed in order to make their contracts and conveyances effective. If she is living with her husband, it is indispensable that her husband join in the execution of her contract or deed for the sale or conveyance of her real estate, and that she acknowledge it in order to its validity. And Sec. 6, Ch. 73, Code, respecting acknowledgments to deeds by married women, expressly provides that, when her acknowledgment is taken and certified in the manner prescribed, it shall "operate to convey from the wife her right of dower in the real estate embraced therein, and pass from her and her representatives all right, title and interest of every nature which, at the date of such writing, she may have in any real estate conveyed thereby, as effectually as if she were, at said date, an unmarried woman; and such writing shall not operate any further upon the wife or her representatives by means of any covenant or warranty therein contained." See also, *Sine* v. *Fox*, 33 W. Va., where, at page 524 of the opinion, it is held that the covenant of warranty by a married woman is "inoperative and of no effect." Apropos to the question under consideration is the decision in *Central Land Co.* v. *Laidley*, 32 W. Va. 134.

There is much conflict in the decisions by the courts of the various states respecting the doctrine of estoppel by deed, as applied to married women. By statute in some of the states their covenants, respecting their separate estates, are made obligatory. But, according to the weight of authority, a statute simply authorizing a married woman to convey her real estate and to contract for the sale thereof, in conjunction with her husband, does not, by implication, empower her to make a covenant for title, which is personally binding on her. 2 Herman on Estoppel, Sec. 582; 13 R. C. L., Sec. 362, and numerous cases cited in Note 10. *Jackson* v. *Vanderheyden*, 17 Johns. 167, 8 Am. Dec. 378, is a leading case on this

subject.  See also numerous cases cited in Freeman's notes in the case of *Nash* v. *Spofford and Wife,* 43 Am. Dec. 426-7.

Her covenant of warranty being inoperative, Ellen McMillion would not have been estopped to set up her after-acquired title to the two acres, nor are her heirs estopped to assert the title which they have inherited from her.  Notwithstanding her warranty, her deed had no greater effect than to pass such interest as she then had in the land, and she had the legal right to acquire, thereafter, another and better title to the same land and assert it against those claiming under her.

These observations lead to a reversal of the decree and a dismissal of plaintiff's bill, and such will be the order of this court.                    *Reversed, and bill dismissed.*