In the Matter of the Estate of K. WERNER HEYE, III, Deceased.

Surrogate's Court, Monroe County, December 28, 1933.

*Redfern & Forsyth*, for the proponents.

*J. J. McInerney* and *E. L. Cleary*, for the contestants.

*Karl & Chapin* [*E. C. Edelman* of counsel], for the German Consul.

FEELY, S.   A last will cannot be set aside at the suit of one who, though there be a probability of success for his effort, still could not legally take as his own any part of the estate even if he were to succeed in establishing decedent died intestate.   The proponents claim this decedent's brother, C. Thayer Pennington — the latter's natural father being still living — was such a stranger to this estate, as well as those who now claim under this brother, he having died four days before his objections were filed herein.   This filing was irregular and raised no issue.   Since his death, objections have been filed by the executor of his will, and also by two of his maternal aunts.

It is undisputed that this decedent, William Pennington, was born in Wayne county, N. Y., in April, 1907; and that his mother was granted a final decree of divorce from his father by the Supreme Court in that county on September 27, 1920, and that two years later the mother alone formally gave this son, William, in adoption to K. Werner Heye, I, under an order of the Supreme Court, Monroe county.   She has since died in the lifetime of the adopted child.   The foster father having a nephew in Germany bearing the same name as his own, this adopted child has been designated as K. Werner Heye, III.   Several years after the adoption the foster father died intestate, having been killed in a collision of his auto with a truck.   His estate is said to amount to

about $100,000. His adopted son thereupon made the last will, now in question, leaving the paternal inheritance to his foster father's relatives in Germany. Thereafter, and in July last, this adopted son was accidentally shot and killed aboard the steamship *Bremen.* When his last will was offered for probate, his natural father testified he favored the probate of the will. The only other one of his children then living was C. Thayer Pennington, of Olympia, Wash. This natural brother of the decedent intervened to contest this will, on the usual grounds, adding that the divorce of his father was fraudulent, and that the adoption of his brother, this decedent, was invalid. When this preliminary issue of status to contest came on for trial, this contestant's counsel conceded, in open court, that the individual present and claiming to be the natural father of the decedent was in fact his father. The testimony offered by the proponents sustained that identification; but when the contestant's counsel pressed his cross-examination to the point of attacking the divorce and the adoption, the ruling was made that the father, then on the witness stand, not having attacked those judgments, no one else could. (*Matter of Hurter,* 111 Misc. 85, 88.) This rendered inapplicable herein the cases which allow the next of kin of a deceased foster parent to maintain an action in equity, after such parent's death, to establish that the adoption was procured by fraud or undue influence (*Stevens* v. *Halstead,* 181 App. Div. 198), or was not in compliance with the statute (*Murphy* v. *Brooks,* 120 Misc. 704). We are concerned here with the legal effect of a valid adoption — not with such as *Hill* v. *Nye* (17 Hun, 457) or *Matter of Huyck* (49 Misc. 391).

Thereupon counsel for the contestants, confronted with the dilemma that, if those judgments were invalid, the father alone — not the brother — was the only one of the decedent's blood living who could contest this will, then went contrary to his pleading and took the other position that those judgments were good, and, therefore, the father was legally " out of the picture," and that then the next nearest of kin was the brother contesting. Unknown to the parties, at the time of the trial, on December 1, 1933, this brother had died November 21, 1933, four days before his objections were filed herein. The matter was continued to allow those who might claim under this deceased brother to intervene in his stead, and his executor and several of his aunts have intervened. Claiming severally, as they do, some by blood, others by will, their standing is only under and through him, if at all, so both positions may be discussed as one.

The divorce and the adoption together undoubtedly exclude the father from any right to take any part of this estate as in intestacy;

so the inquiry narrows down to the question, Did they open the way for the next nearest of kin to come in as if the father were dead? During the argument the expression was used by the court, more for clearness than for accuracy, that the result of those judgments was claimed to be the same as if the father were " civilly dead." If he were " civilly dead," in the proper application of the term, his consent to the adoption would not have been requisite (*Matter of Miller*, 179 N. Y. Supp. 181); nor would his " civil death " bring into application, in his lifetime, the Statutes of Descent and Distribution, because the mention of death in those statutes is intended to refer only to physical death, actually or presumptively proven to have occurred. (*Avery* v. *Everett*, 110 N. Y. 317; *Matter of Zeph*, 50 Hun, 523.)

The combined effect of the two judgments is clear. The father, admitting on the stand that the divorce summons was served on him personally, could not succeed in setting aside the judgment because of falsity in plaintiff's papers as to his whereabouts. The result of this judgment, standing herein unassailed, is that the mother alone, having been thereby awarded the custody of the children, was able to, and did legally place them in adoption, without his consent having been first procured. The most he could do would be to ask for a day in court, not to set the adoption aside on the ground he had not been notified, for the divorce action implied its legal consequences (*Matter of Hurter*, 111 Misc. 85, 91), but only to lay before the court facts that might have a bearing on what was for the best interests of the child. (*Matter of Metzger*, 114 Misc. 313.) The order of adoption in such case is not void, but inconclusive to the extent stated. It stands good until the divorced father attack it on some sufficient ground other than the omission to notify him of the application therefor. Here he has not attacked it, and at this late date probably could not succeed, now that the child has died and equities of great import have heretofore arisen on his acquiescence. (See *Ryan* v. *Sexton*, 191 App. Div. 159, at p. 164.) The recognition of this may have, to some extent, prompted his statement to the court that he wishes this will to go to probate, for then the property will revert to the family in which it originated.

We face a dilemma, therefore, like that before a Special Term in 1880, when an answer setting up that the defendant is " civilly dead " was held inconsistent, for the very fact that the defendant has put in the answer proves that he is alive. (*Freeman* v. *Frank*, 10 Abb. Pr. 370.)

The proponents having produced this decedent's natural father in court and identified him as such, what is the effect of the adoption

on his status, or on that of those claiming through or under either him or the adopted child? Concededly valid, this order of adoption, being a wholly statutory matter (*Matter of Cook*, 187 N. Y. 253), had the effect specified in the statute, namely, to shift over to the foster parents from the natural parents not only the latter's parental right, but also all right of their blood to inherit from their child, who thereby was deprived, as a source or stock of inheritance, of one set of heirs, and was invested instead with another set, namely, his new parents and the relatives of his new parents.

In this respect our statute is clearer than those of other States (See *Dodson* v. *Word*, 31 N. M. 54; 42 A. L. R. 521, note), because it expressly extends to the heirs of the foster parents the latter's right to inherit from the adopted child; and similarly, to those who, since 1931, each have, by adoption, become brothers and sisters, and to their heirs. With reference to the mutual " right of inheritance from each other " (Dom. Rel. Law, § 114), characteristic of adoption, our statute has provided, somewhat ambiguously, that, as to the foster parents, " such right of inheritance extends to the heirs and next of kin of the person adopted, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting." By adoption the collateral relatives of the foster parents become legal next of kin to the adopted child (*Hopkins* v. *Hopkins*, 202 App. Div. 606; affd., 236 N. Y. 545), although the Legislature has not yet provided conversely, as the case last cited holds that the adopted child has not been enabled to inherit through its foster parents from their collateral relatives. (*Matter of Brenner*, 149 Misc. 412.) The state of the statute probably accounts for the like contrast that the adoption does not take from the child the right to inherit from its natural kindred (*Matter of Landers*, 100 Misc. 635; and see 80 A. L. R. 1405), or from its natural parents, although the latter by giving him in adoption have surrendered all the right in them, or in their blood to inherit from him. The reason for the existence of those contrasts is given in *Matter of Cook* (*supra*), thus: " The legal relation is the one established by law, and while it usually follows the natural relation, it does not in all cases. Thus the relation of an adopted child to the foster parent is created by statute and nature has nothing to do with it. The legislature has supreme control of the subject and may give heritable blood where nature did not." It is not in point to urge to a court that the statute is harsh or cruel; nor can it be said to deprive those not benefited by it of any rights that the Constitution can be said to protect. (*Matter of Ziegler*, 82 Misc. 346; affd., 161 App. Div. 589.) The parental surrender of this child resulted, in the words of the adoption statute (Dom. Rel. Law,

§ 114), in the parents having " Thereafter * * * no rights over such a child, or to his property by descent or succession," although " his rights of inheritance and succession from his natural parents remain unaffected by such adoption; " and as regards the adopting parents the adopted child becomes, in law, their natural child and the adopting parents and their heirs then become the child's heirs. By the adoption the natural parents have, in effect, assigned to the foster parents, and to their heirs, all right in their own blood to inherit from their child. Moreover, in the case now at bar, the natural father having survived this child, and its mother being dead, and he, being bound by the adoption she perfected, has by his course of conduct in the premises and his acquiescence in the judgment of divorce and the order of adoption, allowed to be legally diverted from those who might claim to inherit if he were dead, the right to inherit from this child so given in adoption.

In that aspect an adoption can be said to be a statutory assignment of a wholly statutory matter, as regards the natural parents, through whom others must claim, if at all, to inherit from the adopted child. As regards this surviving father, who would be the child's only heir, if there had been no legal adoption, there exists here both an estoppel, and also an assignment arising out of considerations of a nature not wholly statutory. As to property in general, it can be said that any doubt as to the present application of the common law has been removed by statute, so that now " all future contingent interest in things real or personal, and also all possibilities, coupled with an interest, of acquiring property, real or personal, may be granted or assigned at law; and equity will enforce the assignment when the possibility or expectancy has changed into a vested interest or possession." (5 L. R. A. 122, note; Pers. Prop. Law, §§ 86, 156; and see also *Rochester Distilling Co.* v. *Rasey*, 142 N. Y. 570.) Inasmuch as a child could not make any legal last will until the age of eighteen, the parents in that period might be said to have a possibility coupled with an interest that would be assignable, unless in this particular the common-law rule still obtains.

In the particular matter of assignment by an heir of his expectancy to succeed to his living ancestor's estate upon the latter's death, the most of our jurisdictions have departed from the common law and now recognize an equitable assignment of such expectancy or contingent interest. Some of these authorities will be found in the annotation to *Gannon* v. *Graham* (211 Iowa, 516; 231 N. W. 675; 73 A. L. R. 1050, note 16), where the Iowa court held that an assignment of an expectancy on the estate of a living ancestor, though not favored, may be enforced in equity, if made in good

faith, for an adequate consideration, and without fraud, and if not otherwise unconscionable or invalid.

The effect of the death of such assignor in the lifetime of the ancestor has also been considered. It has been held that where the assignment of such expectancy was made, with a covenant of warranty, and the assignor died before the ancestor's death, the assignment did not affect the rights of his children. (*Johnson* v. *Breeding*, 136 Tenn. 528; L. R. A. 1917C, 266; *French* v. *McMillion*, 79 W. Va. 639; L. R. A. 1917D, 228.) Other jurisdictions, however, consider the absence of a warranty does not impair the estoppel. (*Blackwell* v. *Harrelson*, 99 S. C. 264; Ann. Cas. 1916E, 1263.) It has also been held that where a right of inheritance has been released to the ancestor, the release is binding on the heirs of the releasor, but where it is assigned to a stranger, if the assignor dies before the ancestor, his heirs take, to the exclusion of the assignee. (*Donough* v. *Garland*, 269 Ill. 565; Ann. Cas. 1916E, 1238.)

Here the surviving parent, divorced by his wife, and legally foreclosed by his own conduct from questioning the assignment of the right to inherit from this, their child, which was assigned by the mother as the necessary result of the adoption, is the only one who today could repudiate that statutory assignment, but he has chosen rather to ratify it and to let the property return to the family whence it came.

The argument made here by the contestant, that the next of kin of the adopted child are the nearest kindred in its own blood, and not the adoptive parents or the latter's relatives, is an argument that has already been considered by the courts in connection with an adoption statute that wholly failed to bestow upon the adopting parents any right to inherit from the adopted child. This omission to enact, as does our New York statute, that not only the natural parents, after adoption, have no rights to the child's property " by descent or succession," but also that the foster parents and the child acquire " the right of inheritance from each other " (*Matter of Leask*, 197 N. Y. 193), which is extended to the heirs of the foster parents, was an omission that led to divergent views of the right of the natural kindred of the adopted child to inherit from or through it property it had derived from its adoptive parents; and while *Murphy* v. *Portrum* (95 Tenn. 605; 30 L. R. A. 263) supported such right, still " The view that, as to property derived by the child from its adoptive parents, the relatives of such parents are to be regarded as its heirs, even if no statute expressly so prescribes, has, however, also been taken; and it must be admitted that this position is a strong one. The authorities unite in affirming that the status of an adopted child for all legal purposes, and

as to property inherited from an adoptive parent, is that of a natural child. This supplies a premise which has been said to guarantee the conclusion that the adoptive father must inherit from his adopted child property which came to it from his wife, the child's adoptive mother." (1 R. C. L. 614; *Humphries* v. *Davis,* 100 Ind. 369; *Paul* v. *Davis,* Id. 422.) The potent equity underlying that ruling on a statute silent as to inheritance justifies reading our express statutory provision creating a mutual right to inherit from each other as between the foster parents and the adopted child, to the exclusion of its natural parents, and extending the right to the collaterals of the foster parents to inherit from the child also, as a statute that impliedly excludes also the more remote kindred of the natural parents, and prevents the remote kindred, especially in the lifetime of the natural parents who have survived the child, from laying claim through the natural parents to what the latter could not themselves have claimed, nor had ever owned or accumulated. Obviously, it is only through the natural parents that the more remote relatives could claim, and not directly from the adopted child, while either natural parent was living.

So, it has been held that where a child, adopted by a sister of his deceased mother, dies intestate, his property, which he had inherited from his natural father, descends as though he had been the natural son of his foster mother, to the exclusion of heirs on his natural father's side, under section 114 of the Domestic Relations Law, notwithstanding old section 88 of the Decedent Estate Law provided in effect that, in case of such intestacy, realty coming to the decedent from his father's side goes solely to his relatives on that side. (*Ryan* v. *Sexton,* 191 App. Div. 159.) Likewise, in *Matter of Hurter* (111 Misc. 85), former Surrogate KNAPP probated in a foster parent the heirship to land devised to the intestate adopted child by the latter's natural grandparent. In that case the child's natural father, after having divorced its mother, formally gave the child in adoption, without the consent of its natural mother.

The adoption statute by its express reference to inheritance, and to the " heirs " of the foster parents, divests the natural parents forever — and not merely during the life of the adopting parents — of any relation, as parent or heir, toward the child. Likewise, as to the foster parents, the statute contemplates conditions at and after their death, for the inclusion of their heirs implies an indefinite extension into the future. The adoption statute must be read as an exception from the Statute of Descent and Distribution; and the implication is that there cannot be a double inheritance, nor a substitute heirship while nearer kin are still living. Even the death of the foster parent has been held not to change the situation which the adoption had brought about; so that if, after the death

of his foster parent, a second adoption were to have been arranged for this decedent, in his lifetime, neither this natural parent, nor his mother, if living, would, under our New York rule, have had any legal part, right or duty in it (*Matter of MacRae*, 118 App. Div. 907; affd., 189 N. Y. 142; *Myers* v. *Myers*, 197 App. Div. 1) and much less would the more remote kindred.

It is only by statute that the right to inherit from the adopted child is placed exclusively in the foster parents and their kindred, just as, conversely, it is only the express provision of the statute (Dec. Est. Law, § 133) that allows the " next of kin " to share the recovery in an action for wrongful death, to the exclusion of a father or a mother who had " abandoned " the decedent, notwithstanding these latter, the nearest of all kindred, may be living when the recovery is had in such action. In such statutory action, however, the effect of a valid adoption, where there was no abandonment, is to exclude the natural father as the next of kin for whose benefit damages for the wrongful death of the child given in adoption may be recovered, even where the adopting parent had died before the cause of action accrued. (*Carpenter* v. *Buffalo General Electric Co.*, 213 N. Y. 101.)

All those interpretations of the effect of adoption point to a statutory intention to exclude absolutely and forever all the natural kindred and blood relatives from inheriting from the child given in adoption in compliance with the statute.

My conclusion, therefore, on the undisputed facts in this case, is that neither this surviving natural father, nor any other blood relative or legatee intervening herein under said first contestant, C. Thayer Pennington, since deceased, has any standing to maintain a contest of this will of the deceased adopted child, for the reason that the surviving father has chosen to acquiesce for an undue length of time in the disabling effect of judgments that are still binding on him and those under him, which leaves in full force the statutory assignment of the right of the natural blood to inherit from the child, made by the mother in legally giving this child in adoption; and neither the brother, C. Thayer Pennington, since deceased, nor any one, including said natural father, claiming either as kindred or legatees, under or through said C. Thayer Pennington, deceased, legally could, on this record, take as their own any part or intestate share of this estate of the adopted child, and, therefore, are not legally in position to maintain a contest of the latter's will.

All objections, both of the natural kindred and of the legatees or executors under the will of the deceased contestant, should be dismissed on the merits.

Enter a decree accordingly.