Christopher C. McGrath, S.
In this application to settle the account of the Public Administrator, objections have been filed by Mary Joan Carson and Marion Galgano upon the ground that they are the decedent’s sisters and sole distributees and as such are entitled to distribution of the entire estate.
This decedent was born on May 19,1919, and his parents were Thomas and Sarah Punch. At the time of his birth, he had two older sisters living who are the present objectants. From the documentary evidence submitted herein, it appears that after the death of his parents one of the decedent’s uncles placed him in the custody of his grandaunt, Catherine Trainor and her husband, John J. Trainor. When the decedent was about five years of age an order was entered in this court on February 11, 1924, Avhereby he Avas adopted by John J. Trainor and Catherine Trainor, his wife, as their own lawful child. This adoption was granted with the Avritten consent of the decedent’s three paternal uncles, who at that time were the adopted child’s only adult relatives residing in the State of Noav York.
When decedent died intestate on December 22, 1961, his foster parents had already predeceased him. It is contended on behalf of the objectants that the proceedings which resulted in the adoption of their brother were jurisdictionally defective because no one having legal custody consented to the adoption. In addition, it is claimed that since decedent’s natural parents did not give their consent to the adoption, his sisters remain the natural kindred of the decedent and are therefore not barred from inheriting from his estate as his sole blood relatives.
*317 The objectants did not produce any evidence which would in the slightest degree or in any manner impeach the validity of the proceedings which resulted in the adoption of this decedent. An examination by this court of the papers on file in this adoption proceeding and the order entered thereon leads the court to the conclusion that this adoption was regular and proper in all respects.
Since it is clear that the effect of an adoption order upon the distribution of a decedent’s estate is governed by the law in effect at his death and is in no manner dependent upon the law in force at the time of adoption (Carpenter v. Buffalo Gen. Elec. Co., 213 N. Y. 101), the court must apply the law of distribution as it was on December 22,1961 when the decedent died. At that time section 115 of the Domestic Relations Law read in part as follows: “After the making of an order of adoption, the parents of the foster child * * * shall have no rights over such foster child or to his property by descent or succession ”. By chapter 406 of the Laws of 1963, effective March 1, 1964, the last-mentioned section was amended and is now numbered section 117. This amendment was recommended by the Temporary State Commission on the Law of Estates which explains the purpose of this amendment as follows: “Its purpose is to carry out a public policy of placing the adopted child so far as possible within the bloodlines of his new family for inheritance purposes. Under present law, the adopted child inherits from his foster parents but not through them from their kindred and from his. natural parents just as if there had been no adoption, though the natural parents do not inherit from him. By this amendment it is intended to establish that the adopted child will inherit from his foster parents and their kindred. At the same time, all inheritances by the adopted child from his natural family is terminated. Thus all ties with his natural family are severed.” (Emphasis added.)
But even prior to the amendment of section 115 of the Domestic Relations Law by chapter 406 of the Laws of 1963, which severed the last remaining ties between an adopted child and his parents and natural kindred, the case law denying the right of inheritance to the natural kindred of an adopted child had been firmly established (Carpenter v. Buffalo Gen. Elec. Co., supra; Matter of Heye, 149 Misc. 890, affd. 241 App. Div. 907; Matter of Adler, 202 Misc. 1100; Matter of Meyer, 204 Misc. 265, affd. 282 App. Div. 860).
In Matter of Adler (202 Misc. 1100) the then Surrogate of Bronx County held that the natural brothers of a decedent who had been adopted could not take as her distributees. In reaching *318 that determination, the court said (p. 1103): “ Although there is nothing in the adoption law that says that rights between the adopted child and his natural brothers and sisters have been terminated or destroyed, nevertheless, when the natural parents relinquished their rights, the foundation or substructure which joined the blood relatives with the adopted child was removed. Therefore, natural blood relatives who must trace their relationship through a natural parent may not inherit or take from the adopted daughter herein (Ryan v. Sexton [191 App. Div. 159]; Matter of Heye, supra).”
In Matter of Meyer (204 Misc. 265, affd. 282 App. Div. 860) a decedent who had been adopted was survived by natural relatives consisting of a brother, niece and a nephew. The court held that these natural kindred could not inherit as distributees of decedent’s estate.
In view of the foregoing authorities, the court is constrained to hold that the objections filed herein by Mary Joan Carson and Marion G-algano are without merit and must be dismissed.
Since the adoption of the decedent herein had the effect of excluding all of his natural kindred and blood relatives from inheriting from his estate, the collateral relatives of the foster parents became the legal next of kin of the adopted child (Hopkins v. Hopkins, 202 App. Div. 606, affd. 236 N. Y. 545; Matter of Hollstein, 251 App. Div. 771; Matter of Adler, supra). However, from the state of the record herein, the court is unable to determine the identity of all the relatives of the decedent’s foster parents who may be the persons entitled to share in his estate. Accordingly, the net proceeds will be deposited in court pursuant to subdivision (16) of section 136-z of the Surrogate’s Court Act.