OPINION OF THE COURT
Barbara Howe, J.
Decedent died intestate at age 48 on September 2, 2010. His death certificate indicates that he was never married.
On December 23, 2010, decedent’s sister, Marjorie LaBelle, filed a verified petition seeking to become administrator of his estate. The petition states that decedent was survived by four sisters—Barbara LaBelle, Shirley Jones, Linda LaBelle and Marjorie—and two brothers—Gary and Gregory LaBelle. The petition also notes that there are five children of decedent’s predeceased “half-brother Allen Jewett (DOD 2007) who was adopted by decedent’s father’s sister Mary LaBelle.”
Letters of administration were issued to Marjorie on February 2, 2011. Pending now before me is Marjorie’s petition for judicial settlement of this estate, in which Marjorie also asks for the following relief:
“Petitioner is requesting advice and direction to determine that Marie Richter, Allen Jewett, Keith Jewett, April Biddle and Mona Jewett whose deceased father, Allen Francis Jewett (who was a son of the decedent’s father) was adopted by decedent’s father’s sister are not distributes of the decedent since Allen Francis Jewett [’s] adoption occurred on August 20, [1949] prior to revision of Section [117] of the NYS Domestic Relations Law.”
The adoption-out issue having been finally submitted to this court, I find and decide as follows.
As filed in this case, decedent’s family tree, attested to by his sister, Marjorie, is as follows:
*660 (1) Thomas LaBelle (died 1948) married Sandra LaBelle (died 1960), and they had at least two children:
(a) Ronald LaBelle;*
(b) Mary Frances LaBelle Jewett;
(2) Ronald LaBelle (died 1996) was first married to Juanita LaBelle, from whom he was later divorced, and by whom he had a son, Allen LaBelle (died 2007). Ronald LaBelle was also married to Julia LaBelle (died 2004), by whom he had seven children:
(a) Lawrence Bruce LaBelle (this decedent);
(b) Shirley Jones;
(c) Barbara LaBelle;
(d) Linda LaBelle;
(e) Marjorie LaBelle;
(f) Gary LaBelle;
(g) Gregory LaBelle.
(3) Allen LaBelle, Ronald LaBelle’s son by his wife, Juanita, was adopted-out to Ronald’s sister, Mary Frances LaBelle Jewett, in 1949. When Allen died in 2007, he left five children surviving him: April Biddle Jewett; Marie Jewett Schultz; Allen Jewett; Mona Jewett; and Keith Jewett.
The question before me is, notwithstanding Allen’s adoption-out in 1949, are Allen’s children entitled to an intestate share of this estate.
In Matter of Murphy (6 NY3d 36, 39 [2005]), our Court of Appeals discussed inheritance from the birth family by family members who had been adopted-out:
“Adoption did not exist at common law, and New York did not authorize it by statute until 1873 (L 1873, ch 830). That first adoption statute explicitly excluded inheritance from among the rights acquired or lost through adoptive relationships. Fourteen years later, the Legislature amended the statute to allow adopted children to inherit through both birth and adoptive lines (L 1887, ch 703). The matter stood that way through the enactment of the Domestic Relations Law and several versions of what, in 1961, became Domestic Relations Law §117 (L 1961, ch 147). It was not until 1963 that section 117 was amended to preclude adopted-out *661 children from inheriting through their birth relationships, except in cases of adoption by a stepparent. A further amendment in 1966 clarified section U7’s scope by expressly limiting the inheritance preclusion to intestate descent and distribution. (See generally Matter of Seaman, 78 NY2d 451, 455-458 [1991]; Recommendation of Law Rev Commn to 1986 Legislature, Bill Jacket, L 1986, ch 408, at 10; French, Note, When Blood Isn’t Thicker than Water: The Inheritance Rights of Adopted-Out Children in New York, 53 Brook L Rev 1007, 1011-1012 [1988])” (id. at 39 n 2 [emphasis added]).
The Murphy Court also noted that, in 1987, the legislature revised the statute by adding a provision to Domestic Relations Law § 117 permitting adopted-out children in intrafamily adoption situations to inherit from their birth family members in certain specified circumstances {id. at 40). At issue here is Domestic Relations Law § 117 (1) (e), which provides as follows:
“Notwithstanding the provisions of paragraphs (a), (b) and (d) of this subdivision, as to estates of persons dying after the thirty-first day of August, nineteen hundred eighty-seven, if:
“(1) the decedent is the adoptive child’s birth grandparent or is a descendant of such grandparent, and
“(2) an adoptive parent (i) is married to the child’s birth parent, (ii) is the child’s birth grandparent, or (iii) is descended from such grandparent,
“the rights of an adoptive child to inheritance and succession from and through either birth parent shall not terminate upon the making of the order of adoption” (emphasis added).
In Matter of Johnson (18 Misc 3d 898, 901-902 and n 3 [2008]), the court made the following observations about Domestic Relations Law § 117 (1) (e):
“The statutory provision at issue here was enacted in 1987 and restored the right of an adopted person to inherit from biological parents under limited circumstances. The Recommendation of the 1987 Law Revision Commission to the 1987 Legislature indicates the intent of the amendment to Domestic Relations Law § 117 was to advance a fundamental policy underlying the laws governing intestate *662 distribution. (1987 NY Legis Doc No. 65 [E], reprinted in 1987 McKinney’s Session Laws of NY, at 1942.) In sum, the laws of intestacy attempt to distribute the decedent’s property to persons whom the decedent would likely have chosen had he or she executed a will. (See Matter of Shupack, 158 Misc 873, 877 [Sur Ct, Kings County 1936].)
“Accordingly, in cases where a child is adopted by a close family member, ‘the Legislature has chosen not to cut off inheritance ties between the adopted-out child and the natural family that has been replaced because of the likelihood of continued contact with that family.’ (Matter of Seaman, 78 NY2d 451, 461 [1991] [emphasis added].) Because there is a likelihood of contact with biological parents in intrafamily adoptions, the policy concerns of severing adoptees from their biological parents and securing them in new families are not implicated. (See Matter of Best, 66 NY2d 151, 155 n 1 [1985].) This is so because there would be knowledge within the natural and adoptive ‘family of the identity of all of the parties in the great majority of cases.’ (1987 McKinney’s Session Laws of NY, at 1942 [emphasis added].)[3]
In the case now before me, the adopted-out child, decedent’s brother Allen, and decedent, are both the paternal grandchil *663 dren of Tom LaBelle (Domestic Relations Law § 117 [1] [e] [1]). Moreover, Allen’s adoptive mother, Mary Frances (LaBelle) Jewett, is descended from Tom LaBelle, that is, she is his daughter (Domestic Relations Law § 117 [1] [e] [2] [iii]). Thus, Allen had the right to inherit “from and through either [of his] birth parent[s]” (id. § 117 [1] [e]), that is, through his birth father, Ronald.
So viewed, Allen would be an intestate distributee of any of Ronald’s other children who died without surviving spouse, children or parent (EPTL 4-1.1 [a] [5] [“Issue of parents, and no spouse, issue or parent, the whole to the issue of the parents, by representation”]). And, because Allen predeceased his decedent brother, Allen’s children are now entitled to take, in equal pro rata shares, a one-seventh share of decedent’s estate by representation (EPTL 1-2.16 [disposition by representation]). (See Matter of Seaman, 78 NY2d 451 [1991].)
With respect to the contention of counsel that, because Allen was adopted-out in 1949 before enactment of the statutory revisions discussed here, the present provisions do not apply. Estate of DiFrancisco (NYLJ, Feb. 18, 1993 at 31, col 6 [1993]) points out that when the criteria of Domestic Relations Law § 117 (1) (e) are met:
“[T]he rights of an adoptive child to inheritance and succession from and through either natural parent shall not terminate upon the making of the order of adoption (Domestic Relations Law 117 [1] [e]).
“The statute is silent as to the date of the order of adoption. The intent of the statute is not to guarantee the right of the adopted child to inherit by the adoptive relationship to the decedent, but rather to preserve the right of inheritance from and through the natural relationship” (emphasis added).
Similarly, in Matter of Heverly (113 Misc 2d 925, 928 [1981]), the court explained:
“The effect of an adoption order upon the distribution of a decedent’s estate is governed by the law in effect at the time of the decedent’s death and not by the law in effect at the time of the adoption. (Matter of Trainor, 45 Misc 2d 316, 317; Carpenter v Buffalo Gen. Elec. Co., 213 NY 101; 5 Warren’s Heaton, Surrogates’ Courts, § 466, par 1 [aa].) It is thus not a question of retroactivity, but rather time of statutory application.”
*664 I agree with the reasoning in DiFrancisco and in Heverly, and I find that the date when Allen’s intrafamily adoption-out occurred is irrevelant to whether he and his children are entitled to inherit from decedent’s estate.
Applying the foregoing principles, decedent’s net estate will be distributed as follows:
1. Shirley Jones 1/7 share
2. Barbara LaBelle 1/7 share
3. Linda LaBelle 1/7 share
4. Marjorie LaBelle 1/7 share
5. Gary LaBelle 1/7 share
6. Gregory LaBelle 1/7 share
7. April Biddle Jewett 1/35 share
8. Marie Jewett Schultz 1/35 share
1/35 share 9.Allen Jewett
1/35 share 10. Mona Jewett
1/35 share 11. Keith Jewett

 Ronald LaBelle is sometimes also referred to as Rinaldo LaBelle.

“3 While the level of contact between the respondent and the decedent was not a stipulated fact for this motion, the petitioner raises the issue in her papers. However, even if the respondent was unaware of her natural mother’s identity during her mother’s lifetime nor had any contact with her, the court is foreclosed from considering such equities. As stated above, the law will work equitably in the great majority of cases and it has already been noted by the Court of Appeals that equity considerations may not sway courts in such cases because ‘the quantum of contacts or closeness between a distributee and a decedent was already considered by the Legislature when it defined the degree of kinship necessary to qualify adopted-out children and their issue as distributees under Domestic Relations Law § 117 and EPTL 4-1.1.’ (Matter of Seaman, 78 NY2d 451, 461[1991].)” (Some emphasis added, some emphasis omitted.)