Adoption of minors is recognized only under the statute, and not at common law.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adoption, §§ 1, 15.]

2. SAME—PRESUMPTION.

There is no presumption that children living with people whose names they have taken have been adopted.

3. SAME—EVIDENCE.

The fact that decedent was taken from an orphan asylum in another state when he was about seven years old, where he and a brother had been placed on the death of their parents, and took the name of the people with whom he lived, and continued to live with them until he reached his majority, being treated by them as a son, in the absence of evidence of a statutory adoption, is insufficient to raise a presumption of legal adoption.

4. SAME.

Where there was no evidence of adoption, the court will not presume that adoption papers had been executed and were destroyed by a fire in a public building of the county in which the orphan asylum from which the alleged adopted child had been taken was situated, in which building under the law adoption papers would have been filed.

5. SAME.

A presumption that there were no adoption papers ever executed is raised by their absence from the office where, if in existence, they should have been filed.

6. DESCENT AND DISTRIBUTION.

Where there was no evidence that a decedent had been adopted by the persons with whom he had lived from childhood, and he had never married, his brother, as his sole next of kin, was entitled to the entire estate.

In the matter of the settlement of the account of Lewis L. Huyck, administrator of George Huyck. Decree entered.

Wm. W. Southworth, for administrator.
Herbert Peake, for contestant.

CHURCH, S. The sole question for consideration on this accounting is whether the deceased, who was known as George Huyck, had been legally adopted by one John M. Huyck. The decedent's father and mother were named Joseph and Mary Shimunok. They came to this country from Austria in the spring of 1854, bringing with them the

decedent, then known as Joseph Shimunok, who was 6 years of age, and another child, known as John Shimunok, then 12 years of age. They intended to go to Milwaukee, Wis., but sickened and died while on the way there. The infant children, upon their arrival in Milwaukee, were placed in the Milwaukee Orphan Asylum. In the summer oi 1855, Joseph Shimunok was taken to the home of one John M. Huyck, who resided at Oak Grove, in Wisconsin. He was married, having a wife named Elizabeth Huyck. The said Joseph Shimunok was known and recognized by the name of George Huyck, sometimes George W. Huyck, and continued to live with the said John M. Huyck until he was over 21 years of age. In 1868, John M. Huyck and his family, including the decedent, removed to Johnson county, Iowa, where he remained until 1870, when they all moved to Byron, Genesee county, N. Y. There is no record in the orphan asylum, nor in the records of Milwaukee county, Wis., or of Johnson county, Iowa, that any adoption proceeding was ever perfected or attempted by which it could be claimed that the said John M. Huyck and his wife adopted said decedent, Joseph Shimunok, or, as he was otherwise known, George Huyck. Decedent never married and left no descendants. His brother, John Shimunok, is, however, still alive, and contends that, there having been no effective adoption proceedings, he is entitled to the entire estate of the decedent.

At the outset it is advisable to consider the nature and character of the adoption of infant children. The following are the main features of the same, viz.: That, while adoption was early recognized by the civil law, it was not recognized by the common law and exists in the United States only by special statute; that statutes authorizing adoption, therefore, being in derogation of the common law, should be strictly construed; and that it follows, as a consequence, that there is no presumption that minor children living with people whose name they have taken are to be regarded as adopted children. 1 Am. & Eng. Encyc. of Law (2d Ed.) 726-728. As illustrative of the above rules, it has been held that a verbal agreement between the father and another to the effect that the latter should have custody of the child did not constitute an adoption of such child. Taylor v. Deseve, 81 Tex. 246, 16 S. W. 1008. Also, that where an instrument intended to effect an adoption of an infant was duly signed by his surviving parent, but the parties who meant to adopt the child did not execute it because of the illness of the justice, such act was insufficient to constitute an adoption. Long v. Hewitt, 44 Iowa, 363. Also, where articles of adoption of a child were duly executed and acknowledged, but were not filed until after the death of the person making the adoption, it was held that the act was incomplete, and the child could not be regarded as legally adopted. Tyler v. Reynolds, 53 Iowa, 146, 4 N. W. 902. And in our own state, in Matter of Thorne, 155 N. Y. 140, 49 N. E. 661, it has been held that, where parties executed papers reciting that they would adopt an infant child, and in pursuance of such papers such child became a member of the household of her foster parents, which relation was maintained down to 1897, such papers were insufficient as having been executed previous to the statue of this state authorizing such an adoption. It has

also been held in this state that, in the absence of evidence showing
that the statutory method of adoption had be pursued, the fact that up-
on the record books of the orphan asylum from which the child was
taken it was noted that the child was "adopted" by her foster parents,
and that subsequently she went to live with such foster parents and was
treated in every respect as their child, and bore their name, and upon
the death of the foster father, that he left a will and codicil in which
he described the child as his adopted daughter, this was insufficient to
constitute an adoption, or to raise a presumption that adoption papers
had been legally executed. Parties affirming the adoption of the deceas-
ed must, necessarily, bear the burden of establishing that fact. Heine-
mann v. Heard, 62 N. Y. 448. By the above authorities, the fact that
the decedent took the name Huyck, resided with John M. Huyck for
years as his son, was treated as such, and called such, is insufficient to
establish that he was legally adopted.

The next of kin of said John M. Huyck have alleged that, by reason
of the fact that one of the public buildings in the county of Milwaukee
was destroyed by fire, there is a presumption that these conditions would
not have arisen except in pursuance of a legal adoption, and, therefore,
it should be indulged in by the court. The court is referred to the case
of Moore v. Bryant, 10 Tex. Civ. App. 131, 31 S. W. 690. A careful
examination of that case, however, will readily distinguish the facts
upon which it proceeded from the case at bar. It was shown conclu-
sively in that case that the paper purporting to be a proper adoption
had been duly signed and executed, and that the place where such
instrument would have been recorded had been destroyed by fire, by
reason of which the entire records during that period had been con-
sumed; and, in view of these specific facts the court reversed the judg-
ment on the ground of errors in the charge of the judge in relation to the
presumptions which might be indulged in with regard to such facts. In
the case at bar, the building which was destroyed is not shown to have
been a building in which the record of an adoption would have been
either recorded or filed, as, although one of the letters submitted states
that the records are destroyed, yet the certificate of the register in
probate where such papers would necessarily be placed distinctly de-
clares that the building which was destroyed by fire was occupied by
some of the county offices, but that the county judge's office was not in
such building, and that the county court records were complete, there
being a continuous record dating as far back as 1846. By the Wiscon-
sin statute it was provided that the papers in relation to such adoption
should be under the jurisdiction of the county judge. Where a paper
is not found in an office where, if in existence, it ought to be, the pre-
sumption arises that no such document has ever existed. Deshong v.
City of New York, 176 N. Y. 475, 68 N. E. 880.

But, even if the office in which these adoption papers should have
been filed had been actually destroyed, the facts in this case, in my
mind, are far short of what it is necessary to establish in order to pre-
sume that there was any adoption. It will be noticed that there is not a
suggestion contained in all the papers, letters, and other matters sub-
mitted that any person ever knew of any legal papers, agreements, or

court order in relation to this adoption having ever been executed. The executing of papers of adoption would be an important matter, which would be certainly known to the members of the family or to their close friends in the vicinity; and although many years have elapsed since the time when such papers would naturally have been executed, yet there is no doubt that, had such papers ever been so executed, there would be some person in existence who would recall such fact. In the absence of any such proof, therefore, we certainly cannot presume that they were executed and were among the papers destroyed by fire in the building in which they had no legal right to be. The true solution of this case, in my mind, is contained in the suggestion made by the contestant in one of his letters, which have been submitted to the court, viz., that at the time in question, when the deceased was taken from the orphan asylum, the methods of living in Wisconsin were in a very primitive state, and the inhabitants had but little money to waste in incurring legal expenses in relation to a matter of this kind, and that, when the decedent was taken into this family, and treated as a child of these people, and called by their name, they believed that they had complied with all that was necessary in the circumstances. As there was nobody to contest their right to the child, the legal proposition as to their respective rights in the event of his or their death did not occur to their minds. As the deceased was, therefore, never legally adopted, it follows that his sole next of kin and heir at law is his brother, the contestant, John Shimunok.

Let decree be entered accordingly.

Decreed accordingly.