In the Matter of the Estate of JOHN MARCIN, Deceased.

Surrogate's Court, Westchester County, May 16, 1935.

*Edward A. Fay,* for the administratrix.

*Carl D. Isaacs,* for the objectant, claimant.

SLATER, S.  The decedent died intestate on May 31, 1934. The petition for administration sets forth the names of four children.

In the account of proceedings one Mary DeRosa is mentioned as a person claiming an interest as a granddaughter of the deceased. Said Mary DeRosa appeared and filed objections, claiming that her mother, Anna Marcin, married to Johan Martonyak, was a daughter of the decedent, and prays for a decree holding that her mother is one of the children of said decedent and is entitled to a one-fifth share in decedent's estate.

The claim is made by Mary DeRosa that the decedent was the father of her mother, Anna Martonyak, and that by reason of section 24 of the Domestic Relations Law, the child Anna was legitimatized by the marriage of the decedent and Maria Molcsan and is entitled to all the rights of a legitimate child.

It appears from the evidence that the decedent and his wife, Maria Molcsan Marcin, were born in Hungary, now Czechoslovakia; that the decedent came to this country as a young man prior to 1888; that in the old country Maria had a female child named Anna, born May 6, 1888; that the decedent was in Stockton, Penn., in 1887; that Maria appeared in Yonkers in 1892 and there met the decedent and married him on October 8, 1892; that four children were born of the marriage.

The question is, was the decedent one of the parents of Anna? The issue of paternity is involved.

There was offered in evidence a marriage certificate of John Marcin to Maria Molcsan on October 8, 1892, also certificates of baptism of decedent's four children, namely, Mary Marcin, John Marcin, Rudolph Marcin and Julia Marcin. The baptismal certificate of Mary Marcin, the first born, shows that she was born August 3, 1893.

The claimant offered in evidence an application for a marriage license and a record of marriage of Anna Marcin, the mother of the claimant and objector herein, to one Johan Martonyak, performed on the 12th day of October, 1908, in New York city, in which application the name of the bride is given as Anna Marcin, color white, residing at 418 East One Hundred and Nineteenth street, New York city, aged nineteen years, place of birth Hungary, maiden name of mother Maria Molchan, *name of father Johan Marcin*. The application was made by Anna Marcin. Anna Marcin Martonyak died in New York city in 1911.

The claimant produced two witnesses who knew John Marcin in Hastings who testified that twenty-four years ago John had introduced Anna as his "daughter." One of them testified that Anna came to this country and *was brought here by her father and mother*. This contradicts all the material facts of the case and throws doubt upon his general testimony.

The claimant-objectant contends that the statement of Anna Marcin in the application for a marriage license with reference to her father and mother is presumptive evidence of the fact, presumably under the doctrine of *Matter of Matthews* (153 N. Y. 443, 447).

Chief Judge CARDOZO, in *Matter of Findlay* (253 N. Y. 1, 7, 8), restated the rule of law with regard to presumptions. But while the presumption of legitimacy is one of the strongest and most persuasive known to law, it, like other presumptions, has been subject to be rebutted. " By and large, none the less, the courts are generally agreed that countervailing evidence may shatter the presumption * * *. Issue will not be bastardized as the outcome of a choice between nicely balanced probabilities. * * * They will not be held legitimate by a sacrifice of probabilities in a futile quest for certainty." To overcome the presumption, some cases hold that the evidence of non-access must be clear and convincing; other cases hold that the evidence must lead to a conclusion that is strong and irresistible; others that it must be proof beyond all reasonable doubt.

Chief Judge CARDOZO wrote that what is meant by these pronouncements " is this and nothing more, that the presumption will not fail unless common sense and reason are outraged by a holding that it abides. * * * The presumption does not consecrate as truth the extravagantly improbable." The chief judge then cites cases where the court held the presumption to be overcome, rebutted and shattered. He held that the conclusions in *Matter of Findlay* must be ruled by these decisions. To again quote him (at p. 9): " To apply to the facts before us the presumption of legitimacy, we must find in the first place that *Ann Brooks was still in England* in 1874 or 1875. This is very doubtful. On the one side, there is testimony that she left shortly after her elopement in 1864." Again (at p. 11), he said: " the courts must deal with the situation in a common sense way. * * * ' Unless a case of this kind is to be dealt with otherwise than according to the ordinary rules of reason and probability, I think the burden of proof would be rather on those who might suggest that they did meet again than on those who suggest the contrary ' * * *. There are breaths of human nature at which presumptions shrink and wither."

Maria (Mary) Marcin, the wife of John, died intestate on or about June 20, 1914. The verified petition for letters of administration, a solemn declaration made *ante litem motam,* by John showed that Mary left four children, namely, John Marcin, Jr., Mary Sirotiak, Rudolph Marcin and Julia Marcin. The decedent also made an affidavit in the transfer tax proceeding in Mary's

estate, setting forth the names of her four children as hereinbefore stated, and naming no other.

There was produced by the claimant, and not offered but placed in evidence by the court upon objection by the claimant, a certificate of baptism from the book of baptism, Roman Catholic Church of Tarzadobo, diocese of Kassa, county of Saros, written in the Slavish or Hungarian language, of one female named Anna, born May 1, 1888, in Hungary and baptized May 6, 1888. It gives the mother's name as Maria Molcsan. The name of the father is not given. The status of the child is marked as "Illegitimate." According to this record, Anna, the mother of the objectant, was born four years before John and Maria were married. There is no certification by a consular agent, or otherwise. However, such certificate of baptism was received as pedigree evidence. The entry was also admissible as a record made in the ordinary course of business. (Richardson, Outline of Evidence, § 268.) Such evidence was admissible at common law. (*Jackson* v. *King*, 5 Cow. 237; *Lewis* v. *Marshall*, 5 Pet. 469; *Blackburn* v. *Crawfords*, 70 U. S. 175; *Jacobi* v. *Order of Germania*, 73 Hun, 602 [2d Dept.]; *Matter of Greco*, 90 Misc. 241, 244, and cases cited; Wigmore Ev. §§ 1642, 1643.) It has been said that *Bradford* v. *Bradford* (51 N. Y. 669) decided that the register certified too much, that is, gave reference to the fact that the child was illegitimate. Even excluding that portion from the baptismal entry in the instant case, it nowhere discloses the name of the male parent. It is highly significant that the date of this certificate was *March 17, 1915*, after the death of Mary Marcin. It was not produced until this trial was had. John Marcin, the reputed father, was dead.

Mary Hidock, a witness for the estate, testified that she knew John Marcin in this country, in Pennsylvania, as a lad in 1887; that she came to this country in 1885, was married October 3, 1885, and went to Stockton, Penn., a coal mining town; that in 1888 she removed to Yonkers; that in 1888 John was eighteen years old; that she attended his wedding to Mary Molcsan in October, 1892; that he came to Yonkers two months before he was married; that Mary worked in the carpet shop; that Mary Molcsan lived on the same floor with her; that John never returned to Europe; that the Marcins and also the witness moved to Hastings; that she never saw Anna; that when John came to Yonkers he told her he came from Stockton; that John said he met Mary about two months before he married her.

Upon an issue of paternity, the conduct of the parents toward the child is admissible as involving an inference, but such an inference in a paternity case may be disregarded upon proof of non-

access. It is obvious that John Marcin's physical presence in Hungary at the requisite time for conception of this child was necessary to create him the father. Even then, admission, or proof, must be had to indicate that he was the *actual* parent. There is here an essential inconsistency produced by the evidence, the testimony of Mary Hidock, which creates the theory of an alibi. The theory of an alibi is that the fact of presence elsewhere is essentially inconsistent with presence at the place and time necessary for the decedent to have been the parent of this child. To apply the presumption of paternity, it must be found that John Marcin was in Hungary in 1887. If a case of this kind is to be dealt with according to the ordinary rules of reason and probability, the burden of proof is rather on those who suggest that John was the actual father. So, in the face of the evidence, any presumption must fade and shrivel. To apply to the facts the presumption of parenthood, it must be found that John Marcin " was still in " Hungary in 1887. With the presumption gone as a rule of law, the burden of establishing the fact of paternity is cast upon the claimant and it has not been sustained.

Acknowledgment of a child by a reputed father or mother is generally all the evidence of the fact, even that the child is the child of the woman, and such acknowledgment is sufficient evidence, if not rebutted by clear evidence to the contrary. In the instant case there is no evidence offered by the claimant, except that which was stated by the two witnesses with regard to an introduction of Anna and reference to her as his daughter. Very little weight, if any, should be given to such statements. They are too commonly made by men and women who introduce their stepchildren by referring to them as " my son " or " my daughter." In my opinion, such a statement has little weight. (Jones Ev. [3d ed.] § 317.) This is set out in *Matter of Huyck* (49 Misc. 391); *Matter of Greco* (90 id. 241); *Matter of Kuehn* (170 N. Y. Supp. 900).

This is not the usual case found in the books of a child born to parents living openly together in an illicit relationship and who later marry, or being married have a child, the parentage of which is being questioned. (*Matter of Barthel*, 111 Misc. 727.) No evidence was presented by the claimant to prove that the decedent was in Hungary in 1887. The obvious conclusion is that Anna was an illegitimate child of Maria Molcsan, and not a child of John Marcin.

Neither side produced evidence showing the date of immigration to this country of any of the parties.

The claimant is now twenty-six years of age. The decedent died in June, 1934. No effort by the claimant was brought to the atten-

tion of the court to raise or prove her contentions in the decedent's lifetime. Such effort could have been by an action for declaratory judgment. (*Morecroft* v. *Taylor*, 225 App. Div. 562.)

I hold that the claimant, Mary DeRosa, is not a grandchild of John Marcin or a distributee of his estate. The objections are dismissed.

Submit decree in accordance with this opinion and decision.