PEARL JACOBS, Petitioner, *v.* IRVING JACOBS, Respondent.

Domestic Relations Court of City of New York, Family Court Division, Kings County, June 1, 1937.

*Jacob M. Mandelbaum*, for the petitioner.

*I. Arthur Rosenberg*, for the respondent.

PANKEN, J. The testimony in this case presents a question of fact which is rather difficult of solution.

When the legitimacy of a child born during wedlock is put in issue, a presumption exists in favor of the legitimacy of the child and unless that presumption is overcome by credible testimony, the child should and does, under the law, profit and is protected by the presumption raised in its favor. With all that, a determination of the disputed fact is hard to arrive at. The mantle thrown about the child by the law for its protection may fasten upon an alleged father an obligation to support that child and recognize it as his legitimate offspring when, in fact, it is not so.

More difficult is the problem when the child is born out of wedlock and the alleged father marries the mother of the child subsequent to its birth but denies parenthood. In the protection of a child, regard of the rights of the alleged father must not be lost.

The facts in the proceeding before me are substantially as follows:

The petitioner who is seeking support for herself and her child is the wife of the respondent having married him some three and one-half months after the infant was born. It is asserted that the respondent is the father of the child; that the marriage between him and the petitioner was performed and consummated to confer legitimacy upon the innocent offspring. That assertion is vehemently resisted by the respondent. He charges that the marriage with the petitioner was procured as the result of coercion and duress. The fact is that he had been indicted for seduction. In order to escape prosecution, under the indictment, he claims he agreed to the marriage. It is his claim that when the marriage contract was discussed, it was understood that it should be only a perfunctory marriage; that after the ceremony had been performed, the marriage was to be ended by a divorce proceeding.

If the marriage took place because of coercion or duress it is voidable as a matter of law, and a proceeding in a proper court would, if the facts were established, result in an annulment.

The Domestic Relations Court of the City of New York has no power to invalidate or void, by a decree of annulment, a marriage between parties. It is a court of limited jurisdiction. The powers conferred upon it do not include the right to set aside a marriage contract between parties capable to enter upon such contract. Both the petitioner and the respondent in this proceeding were capable to enter upon the marriage contract when the ceremony solemnizing it took place. If duress or coercion compelled the respondent to enter the marriage contract, his remedy was in a proceeding in the Supreme Court of the State of New York.

An agreement to have a marriage ceremony performed with the understanding that the marriage contract will be dissolved by a divorce proceeding is not only contrary to public policy but is violative of decency. It does violence to the marriage institution and reduces the sacred relationship to a mockery.

The marriage contract was consummated between the petitioner and the respondent. The testimony shows that they have entered upon the marriage relationship and continued in that relationship for a considerable period of time.

In so far as the wife is concerned, the obligation to provide for her arose by the consummation of the marriage, and continues if she is or is likely to become a public charge or if the respondent has abandoned her. From the testimony in the case it appears that the respondent did abandon the petitioner; and so, whether she is a public charge or likely to become one, the responsibility which he undertook upon entering into the marriage contract must be discharged by him.

The question upon which there is an issue is whether or not provision should be made for the child born to the petitioner. That can be done if the testimony in the case supports the allegation that the child was begotten by the respondent and the marriage contract was entered upon in order to legitimatize the child; having entered into the marriage contract with the petitioner knowing of the existence of the child, the least that can be said is that he would be responsible for the support of his stepchild, so that the obligation to support the infant is no less than the obligation to support its mother.

The presumption of legitimacy following a child born in wedlock does not follow a child born out of wedlock. The proof required to establish an obligation on the part of an alleged father to support a child born out of wedlock is of a different character than proof to overcome the presumption of legitimacy of a child when born during wedlock.

In law, a child born out of wedlock is illegitimate in so far as its rights are concerned with relation to its father.

Section 24 of the Domestic Relations Law reads: "Effect of marriage of parents of illegitimates. All illegitimate children whose parents have heretofore intermarried or who shall hereafter intermarry shall thereby become legitimatized and shall become legitimate for all purposes and entitled to all the rights and privileges of legitimate children."

In so far as section 24 has been quoted, it is applicable to the facts developed on the trial in this proceeding.

While the respondent rejects the parenthood of the child, and in support of that rejection claims that the marriage ceremony was agreed to by him under duress and coercion, credulity must be stretched to the limit to accept his statements, though under oath, as the fact. It is inconceivable that a young man who had never cohabited with a girl and which girl had given birth to a child will, under threat of a prosecution for seduction, marry the girl knowing that the marriage would legitimatize the child; in fact, the testimony is that the purpose of the marriage from the angle of the respondent was to legitimatize the child. Equally inconceivable is the testimony that the marriage was performed pursuant to an agreement that it would immediately be dissolved by a divorce proceeding. The fact that the respondent was represented by counsel when the marriage ceremony was solemnized and the conferences antecedent to the ceremony, lends color to the truth of the testimony submitted on behalf of the petitioner.

That which is violative of public policy is contrary to the law. Attorneys at law are officers of the court, and presumably do not lend themselves to violations of public policy and to acts contrary to the law.

On all the testimony in this case, I find that the child is a legitimate offspring begotten by the respondent and, under section 24 of the Domestic Relations Law, the subsequent marriage to the woman who bore his child legitimatizes the child and invests it with all rights and privileges of a legitimate child.

The respondent, therefore, is obligated both to support his wife and his child.

Let counsel appear before me to submit additional proof as to the earnings of the respondent at this time in order that I may fix the amount to be contributed by him weekly in accord with the findings and the decision herein made.