S. Samuel Di Falco, S.
Letters of administration had been heretofore granted to the respondent upon the representation that the nearest blood relatives were the decedent’s brother and sisters. The petitioner seeks the revocation of such letters and the issuance of letters to her as the decedent’s daughter and sole distributee, alleging that the grant of the respondent’s letters 1 ‘ was obtained by a false suggestion of a material fact ’ ’ (Surrogate’s Ct. Act, § 99, subd. 4). The petitioner’s status as the decedent’s daughter is challenged by the respondent. The burden of proving that she is the decedent’s daughter rests upon the petitioner. (Matter of Dugro, 261 App. Div. 236, 238, affd. 287 N. Y. 595; Matter of Nones, 115 N. Y. S. 2d 830, 832, affd. 278 App. Div. 924; Matter of Greco, 90 Misc. 241.)
The petitioner did not produce a copy of her birth certificate or any evidence of the time and place of her birth. Indeed, she has strenuously resisted the attempts of the respondent to obtain a copy of the birth certificate which would appear to be that of the petitioner. As proof of her relationship to the decedent, the petitioner called witnesses who testified to numerous references by the decedent to the petitioner as his daughter. On one occasion he referred to her as the only child he had. It was stated that it was his practice to introduce the petitioner to others as his daughter. The decedent also referred to the petitioner’s child as his grandchild. The husband of the petitioner testified that in his conversations with the decedent relating to his marriage, the decedent always referred to the petitioner as his daughter. The only additional proof offered by the petitioner consists of three policies of insurance on the decedent’s life. Originally the decedent’s wife was named as beneficiary. After her death the petitioner was designated beneficiary in each policy and in each was described as “ daughter ”. One of the policies was payable to her only in the event that she be living at the time of payment, and otherwise her daughter, who was described as ‘ ‘ granddaughter ’ ’, was to receive the proceeds.
It is conceded that the petitioner is the daughter of the decedent’s wife. The decedent married on July 20, 1918 in Passaic, New Jersey. The petitioner was born in December, 1913 in Ooplay, Pennsylvania. A witness, who was related to the peti *729 tioner’s mother testified that the mother had come to her home just prior to the birth of her child, that the child was born in her home, that the witness carried the child to church to be baptized, and that the child’s name is the same as that of the petitioner. At no time did the petitioner’s mother ever mention the name of the father of her child. The witness saw the child again when she was about four years old. She saw the mother of the petitioner on later occasions. This and other testimony in the record makes it clear that the petitioner was born approximately five years prior to the marriage of the decedent and her mother.
The respondent endeavored to procure a copy of the birth certificate of a child born on December 6, 1913 in Coplay, Pennsylvania, bearing the same first name as the petitioner and a surname very similar to that of her mother. The name would appear to be of Polish origin, and the slight differences in spelling are understandable. The petitioner opposed the application of the respondent for an order directing the officer having custody of the birth record to issue a certified copy of it to the respondent, taking the position that the last names were spelled differently and that there was no proof that the birth record sought to be obtained was the record of her birth. The court being unable to issue a directive to an officer of a foreign State, directed the petitioner to deliver her consent to the furnishing of the birth record. The petitioner disputing the fact that the birth record was hers, furnished a consent in such form that the Pennsylvania officials would not recognize it as the consent of the person involved. Accordingly no birth record of the petitioner is in evidence.
The court is convinced from the evidence in the record that the petitioner was born on December 6, 1913 at Coplay, Pennsylvania, nearly five years prior to the marriage of the decedent and her mother.
The petitioner’s contention, as the court understood it prior to and during the hearing, was that she had been born to the decedent and his wife during their marriage. The evidence establishes that she was born nearly five years earlier. Neither party to the proceeding has argued the point that the decedent’s marriage to the petitioner’s mother, gave rise to a presumption that he was her natural father and that she became legitimate as the child of parents who were subsequently married (Domestic Relations Law, § 24). The court has nonetheless considered that point.
There is no proof whatever in the record with respect to the decedent prior to his marriage on July 20, 1918. There is no *730 evidence as to where he resided or how long he had known the lady he married. It does not appear that they were even acquainted in 1913. To assume that the decedent was the father of the child simply because he married her mother five years after her birth would be to press the presumption of legitimacy beyond all reasonable limits. There is a difference of view as to whether any presumption at all would exist in such cases (Presumption of Legitimacy or of Paternity, Ann. 57 A. L. R. 2d 785-790). It was said long ago in England: “ A certain presumption of paternity arises from the bare fact that a man knowingly marries the mother of an illegitimate child previously born. But this is a very weak presumption. In the absence of all other evidence, all that can be said is probably that it is more likely than not that he is the father. ”(Gardner v. Gardner, L. R. 2 App. Cases, 723, 729.) However, in that case and in other cases where the presumption was given any effect, the marriage was so close in time to the child’s birth and the other circumstances were such that the court could fairly draw the inference of parentage. Thus in Jacobs v. Jacobs (163 Misc. 98), the court pointed out the difference in the presumption when the child is born during a marriage and when he is born out of wedlock. The court did not attempt to apply any presumption at all in the case before it but upon all of the evidence before it found as a fact that the respondent was the father of the child.
Obviously any inference of parentage would be stronger when the birth and marriage are very close in point of time, and it grows progressively weaker as the time between these events increases. When five years have elapsed between the birth of the child and the marriage of her mother, something more must be required than the mere fact of marriage in order to support an inference that the person marrying the mother of the child was in fact the father of the child.
It is true that in this case there must be taken into consideration the decedent’s references to the petitioner as his daughter. However, as the court said in Matter of Marcin (156 Misc. 14, 18, affd. 246 App. Div. 740): “ Very little weight, if any, should be given to such statements. They are too commonly made by men and women who introduce their stepchildren by referring to them as 1 my son ’ or ‘ my daughter ’.” (See, also, Matter of Huyck, 49 Misc. 391; Matter of Greco, 90 Misc. 241 and Matter of Kuehn, 170 N. Y. S. 900.) The petitioner was at least the stepchild of the decedent, and one would not expect him to explain to others the precise relationship and background of the petitioner. The reference to her as his daughter is quite *731 understandable without trying to read into it an admission that he was her natural father. Despite these references to petitioner, however, it appears from the testimony of the respondent that immediately after his marriage and within his own family, decedent stated that the petitioner was the child of his wife and another.
The burden of establishing her relationship to the decedent rests, as stated hereinabove, upon the petitioner. She has failed to sustain that burden. The petition is denied.