In the Matter of the Accounting of ANDREW E. FODOR, as Administrator of the Estate of HEDWIG ADLER, Deceased.

Surrogate's Court, Bronx County, December 9, 1952.

*Leo Koenig* and *Bernard Cahn* for administrator, petitioner.

*Solon S. Kane*, special guardian for unknown distributees.

Potts, S. In 1909 the decedent and her husband, Julius M. Adler, adopted decedent's niece, Magda Fodor, in New York County. Some time thereafter Magda married and went to live with her husband in Hungary as a permanent resident. Shortly before the last war, the decedent proceeded to Hungary to visit her adopted daughter. Both women fell victims of a pogrom. This court has heretofore determined that Hedwig Adler died in a German concentration camp on August 15, 1944.

Magda, the adopted daughter, survived her ordeal and imprisonment, but shortly thereafter died intestate on January 9, 1945. Magda's husband predeceased her. They had no children.

In this proceeding to settle the account of the administrator, a question has been presented respecting the proper distribution of this decedent's estate. Since Julius M. Adler, the husband of the decedent herein, predeceased her and they had no children other than their adopted daughter, Magda, there can be no question that Magda's estate is entitled to the personal property accounted for herein (Domestic Relations Law, § 115), and that said personal property passes pursuant to the laws of Magda's domicile and not in accordance with the laws of New York (Decedent Estate Law, § 47; *Matter of Gifford,* 279 N. Y. 470, 475).

However, at the time of her death, the decedent herein was the owner of real property located in the State of New York. This property was sold by her administrator in conformity with article 13 of the Surrogate's Court Act. The distribution of the proceeds of this sale, being still in law regarded as real property, presents for consideration and determination this question, namely: Are the proceeds distributable to the adopted daughter's heirs at law acquired by reason of her adoption or are the proceeds to be alloted to her natural kindred?

The portion of the adoption statute which is pertinent to the problem herein reads as follows: " After the making of an order of adoption, the parents of the foster child * * * shall have no rights over such foster child or to his property by descent or succession * * * The foster parents * * * and the foster child * * * shall have all the rights and be subject to all the duties of that relation including the rights of inheritance from each other." (Domestic Relations Law, § 115.) It is clear that the rights of inheritance of a foster child from a foster parent are those in effect at the foster

parent's death and not those conferred at the time of the adoption (*Carpenter* v. *Buffalo General Elec. Co.*, 213 N. Y. 101; *Matter of Whitcomb*, 170 Misc. 579; *Matter of Gallaudet*, 135' Misc. 163).

By adoption the collateral relatives of the foster parents become legal next of kin to the adopted child (*Hopkins* v. *Hopkins*, 202 App. Div. 606, affd. 236 N. Y. 545; *Matter of Hollstein*, 251 App. Div. 771; *Ryan* v. *Sexton*, 191 App. Div. 159; *Carpenter* v. *Buffalo General Elec. Co., supra*); although the converse is not true, since an adopted child is not entitled to inherit from the next of kin of her foster parents (*Matter of Hodges*, 294 N. Y. 58).

When a child is given up for adoption, his natural parents have, in effect, destroyed the mythical cord which nature has provided to bind them with the child, and the adoption has the effect of excluding the natural parents and all the natural kindred and blood relatives of the child from inheriting from the adopted child (*Matter of Heye*, 149 Misc. 890, affd. 241 App. Div. 907; *Carpenter* v. *Buffalo General Elec. Co., supra*). However, the statute preserves the rights of the foster child to inherit from his natural parents (Domestic Relations Law, § 115), and the adoption does not take away from the child the right to inherit from his natural kindred (*Matter of Landers*, 100 Misc. 635).

The decedent's adopted daughter has been survived by three natural brothers who make claim to the proceeds of the real property which descended to their sister, Magda. To substantiate this claim they have submitted the opinion of an expert on Hungarian law which indicates that since Magda was domiciled in Hungary, her property under the laws of Hungary passed on her death intestate to the persons most closely related to her by blood, despite the fact that she had been adopted. They argue that since there is nothing repugnant to the public policy of this State in a foreign law which regards the natural brothers of an adopted person as her natural kin in preference to the relatives of her foster parents, they have a prior right to the proceeds of the real property herein involved. This novel argument is without merit in the face of the unequivocal language contained in section 47 of the Decedent Estate Law which holds that the intestate devolution of her real property located in New York is regulated by the laws of this State without regard to the residence of the decedent.

Since the law of New York governs the distribution of the proceeds of the real property herein, we must look to the effect of an adoption under New York law. As heretofore pointed out, the adoption statute states that the natural parents shall have no rights over such foster child or his property by descent or inheritance. Although there is nothing in the adoption law that says that rights between the adopted child and his natural brothers and sisters have been terminated or destroyed, nevertheless, when the natural parents relinquished their rights, the foundation or substructure which joined the blood relatives with the adopted child was removed. Therefore, natural blood relatives who must trace their relationship through a natural parent may not inherit or take from the adopted daughter herein (*Ryan* v. *Sexton, supra; Matter of Heye, supra*).

From the facts set forth in the petition, it appears that the heirs at law of the adopted daughter based on Hedwig Adler's side of the family are two of Magda's brothers who are her foster first cousins (the remaining brother is only a half brother and not related to her on the part of Hedwig Adler), and two other first cousins, all related to Magda through her foster mother. Magda's heirs at law based on her foster father's side of the family are a brother and two sisters of Julius M. Adler, whose names and whereabouts are unknown, and it is not known whether they are living or dead, and if they are dead, whether they were survived by children.

From the state of the record herein, the court is unable to determine the identity of all the relatives of the foster parents who are entitled to the proceeds from the sale of the real property. In accordance with section 272 of the Surrogate's Court Act, the decree will direct the administrator to pay the proceeds to the State Comptroller, less the amount chargeable to said fund for the special guardian's fee, commissions and the expenses of the accounting. An affidavit should be submitted showing the proposed allocation of the aforesaid administration expenses.

Settle **decree.**