2005 WY 24

**Brett HEDE and Judi Hede,
Appellants (Plaintiffs),**

v.

**Carl GILSTRAP and Debbie Gilstrap,
Appellees (Defendants).**

No. 04–22.

Supreme Court of Wyoming.

Feb. 28, 2005.

Representing Appellants: Keith R. Nachbar, Casper, Wyoming.

Representing Appellees: Gibson Sean Benham, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and STEBNER, D.J. RET.

VOIGT, Justice.

[¶ 1] This case involves a conflict between visitation rights obtained by paternal grandparents under Wyo. Stat. Ann. § 20–7–101 (LexisNexis 2003) and a subsequent adoption of the child by maternal grandparents under

Wyo. Stat. Ann. § 1–22–101 *et. seq.*, (LexisNexis 2003). We affirm the summary judgment in favor of the maternal grandparents.

## ISSUES

1. Does an existing visitation order issued in favor of a child's paternal grandparents survive the subsequent adoption of the grandchild by her maternal grandparents?

2. Were the paternal grandparents entitled to discovery of documents relating to the adoption?

## FACTS

[¶ 2] The appellants are the paternal grandparents of the minor child who is the focus of this action. In 1999, the appellants obtained a court order granting them visitation with the child. In 2002, the child was adopted by the appellees, who are her maternal grandparents. The appellees' refusal to allow visitation by the appellants after the adoption resulted in this declaratory judgment action.[1]

## THE GRANDPARENT VISITATION STATUTE

[¶ 3] § 20–7–101. **Establishing grandparents' visitation rights.**

(a) A grandparent may bring an original action against any person having custody of the grandparent's minor grandchild to establish reasonable visitation rights to the child. If the court finds, after a hearing, that visitation would be in the best interest of the child and that the rights of the child's parents are not substantially impaired, the court shall grant reasonable visitation rights to the grandparent. In any action under this section for which the court appoints a guardian ad litem, the grandparent shall be responsible for all fees and expenses associated with the appointment.

---

1.
Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.
Wyo. Stat. Ann. § 1–37–103 (LexisNexis 2003).

(i) to (iii) Repealed by Laws 1997, ch. 71, § 2 [effective July 1, 1997].

(b) Repealed by Laws 1997, ch. 71, § 2 [effective July 1, 1997].

(c) No action to establish visitation rights may be brought by a grandparent under subsection (a) of this section if the minor grandchild has been adopted and neither adopting parent is a natural parent of the child.

(d) In any action or proceeding in which visitation rights have been granted to a grandparent under this section, the court may for good cause upon petition of the person having custody or who is the guardian of the child, revoke or amend the visitation rights granted to the grandparent.

### THE RELEVANT ADOPTION STATUTES

[¶ 4]    § 1–22–104.  Petition for adoption of minor....

. . .

(d) The petition and documents filed pursuant to this section, and the interlocutory decree, if entered, and the final decree of adoption shall constitute a confidential file and shall be available for inspection only to the judge, or, by order of court, to the parties to the proceedings or their attorneys....

### § 1–22–105.  Hearings to be closed; attendance of parties.

(a) Unless the court orders a hearing in open court, all hearings in adoption proceedings shall be confidential and held in closed court or court chambers.  No person shall be admitted except court officials, parties to the proceeding, counsel, nonconsenting parents, the nonconsenting putative father of the child and witnesses.

### § 1–22–107.  Service of petition and order....

(a) Prior to the hearing a copy of the petition to adopt a child and all orders to show cause shall be served on any persons whose consent to adoption is required by W.S. 1–22–109 and whose consent has not been filed with the petition to adopt....

### § 1–22–108.  Hearing on petition and objections....

. . .

(b) When any person whose consent is required objects to the petition to adopt, he shall at least five (5) days before the hearing file his objections and serve them on all parties to the proceedings, including any person whose consent has been filed.

### § 1–22–109.  Consent to adoption.

(a) A written relinquishment of custody of the child to be adopted and written consent to adoption shall be filed with the petition to adopt and shall be signed by:

(i) Both parents, if living;  or

(ii) The surviving parent;  or

(iii) The mother and putative father of the child if the name of the putative father is known;  or

(iv) The mother alone if she does not know the name of the putative father . . .;  or

(v) The legal guardian of the person of the child if neither parent is living or if parental rights have been judicially terminated;  or

(vi) The executive head of the agency to whom the child has been relinquished for adoption;  or

(vii) The person having exclusive legal custody of the child by court order;  or

(viii) The legally appointed guardian of any parent or putative father who has been adjudged mentally incompetent.

### § 1–22–111.  Decree; investigation; denial of adoption.

(a) After the petition to adopt has been filed and a hearing held the court acting in the best interest and welfare of the child may make any of the following orders:

(i) Enter an interlocutory decree of adoption giving the care and custody of the child to the petitioners pending further order of the court;

(ii) Defer entry of an interlocutory decree of adoption and order the department of family services or a private licensed agency to investigate and report to the court the background of the child and of the petitioners, and the medical, social and psychological background and

status of the consenting parent and putative father. . . .

(iii) Enter a final decree of adoption if the child has resided in the home of the petitioner for six (6) months; or

(iv) Deny the adoption if the court finds that the best interests and welfare of the child will be served by such denial.

**§ 1–22–114. Effect of adoption.**

(a) Upon the entry of a final decree of adoption the former parent, guardian or putative father of the child shall have no right to the control or custody of the child. The adopting persons shall have all of the rights and obligations respecting the child as if they were natural parents.

(b) Adopted persons may assume the surname of the adoptive parents. They are entitled to the same rights of person and property as children and heirs at law of the persons who adopted them.

### STANDARD OF REVIEW

[¶ 5] We recently set forth our standard of review of a summary judgment granted in a declaratory judgment action:

Summary judgment motions are governed generally by W.R.C.P. 56, and specifically by the following language found in subsection (c) of the rule:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

W.R.C.P. 56(a) and (b) provide that summary judgment may be appropriate for either the plaintiff or the defendant in a declaratory judgment action. A summary judgment entered in a declaratory judgment action is subject to our usual standard for review of summary judgments. *Wyoming Community College Com'n v. Casper Community College Dist.*, 2001 WY 86, ¶ 11, 31 P.3d 1242, 1247 (Wyo.2001); *Fontaine v. Board of County Com'rs of Park County*, 4 P.3d 890, 892 (Wyo.2000).

"This Court reviews a summary judgment in the same light as the district court, using the same materials and following the same standards." *Markstein v. Countryside I, L.L.C.*, 2003 WY 122, ¶ 11, 77 P.3d 389, 393 (Wyo.2003). Where, as here, there are no contentions that genuine issues of material fact exist, our concern is strictly with application of the law. *Wyoming Community College Com'n*, 2001 WY 86, ¶ 11, 31 P.3d at 1247. We accord no deference to the district court's conclusions on questions of law. *Yeager v. Forbes*, 2003 WY 134, ¶ 12, 78 P.3d 241, 246 (Wyo. 2003).

*Board of County Com'rs of County of Laramie v. City of Cheyenne*, 2004 WY 16, ¶¶ 7–8, 85 P.3d 999, 1002 (Wyo.2004).

[¶ 6] Because both adoption and grandparent visitation are purely statutory, our task will be one of statutory construction:

"This court interprets statutes by giving effect to the legislature's intent. . . . We begin by making an inquiry relating to the ordinary and obvious meaning of the words employed according to their arrangement and connection. . . . We give effect to every word, clause, and sentence and construe together all components of a statute *in pari materia.* . . . Statutory interpretation is a question of law. . . . We review questions of law de novo without affording deference to the district court's decision."

*Worcester v. State*, 2001 WY 82, ¶ 13, 30 P.3d 47, 52 (Wyo.2001). If a statute is clear and unambiguous, we simply give effect to its plain meaning. . . . Only when we find a statute to be ambiguous do we resort to the general principles of statutory construction. . . . An ambiguous statute is one whose meaning is uncertain because it is susceptible to more than one interpretation. . . .

"It is a basic rule of statutory construction that courts may try to determine legislative intent by considering the type of statute being interpreted and what the legislature intended by the language used, viewed in light of the objects and purposes to be accomplished. . . . Furthermore, when we are

confronted with two possible but conflicting conclusions, we will choose the one most logically designed to ·cure the mischief or inequity that the legislature was attempting to accomplish."

*In re Collicott,* 2001 WY 35, ¶ 9, 20 P.3d 1077, 1080 (Wyo.2001). We presume that statutes are enacted by the legislature with full knowledge of existing law, so we construe statutes in harmony with existing law, particularly other statutes relating to the same subject or having the same purpose. . . .

> Statutes must be construed so that no portion is rendered meaningless. . . . Interpretation should not produce an absurd result. . . . We are guided by the full text of the statute, paying attention to its internal structure and the functional relation between the parts and the whole. . . . Each word of a statute is to be afforded meaning, with none rendered superfluous. . . . Further, the meaning afforded to a word should be that word's standard popular meaning unless another meaning is clearly intended. . . . If the meaning of a word is unclear, it should be afforded the meaning that best accomplishes the statute's purpose. . . . We presume that the legislature acts intentionally when it uses particular language in one statute, but not in another. . . . If two sections of legislation appear to conflict, they should be given a reading that gives them both effect.

*Rodriguez v. Casey,* 2002 WY 111, ¶¶ 9–10, 50 P.3d 323, 326–27 (Wyo.2002). In addition, it is a well-known principle of law that courts are not free to legislate. The first rule of statutory construction is that legislative intent, not a court's perception of fairness, controls. *State Dept. of Revenue and Taxation v. Pacificorp,* 872 P.2d 1163, 1166 (Wyo.1994); *Olheiser v. State ex rel. Wyoming Workers' Compensation Div.,* 866 P.2d 768, 770 (Wyo.1994). It is not the court's prerogative to usurp the power of the legislature by deciding what should have been said. *Barber v. State Highway Commission,* 80 Wyo. 340, 342 P.2d 723, 725 (1959). The courts must follow, and cannot extend, statutory definitions. *State*

*v. Weeden,* 17 Wyo. 418, 100 P. 114, 115 (1909). For over a century, Wyoming courts have recognized that it is their duty only to interpret and declare what the law is, not to be responsible for its defects. *Hamilton v. Territory of Wyoming,* 1 Wyo. 131, 135 (1873). And of specific importance to the instant case is the precept that exceptions not made by the legislature in a statute cannot be read into it. *State ex rel. Peterson v. Ellsworth,* 59 Wyo. 288, 139 P.2d 744, 748 (1943).

*In re Estate of Seader,* 2003 WY 119, ¶ 23, 76 P.3d 1236, 1244 (Wyo.2003). Statutes are presumed to be constitutional, with any doubts in that regard resolved in favor of constitutionality, and with the statute's challenger bearing the burden of showing unconstitutionality beyond any reasonable doubt. *Cathcart v. Meyer,* 2004 WY 49, ¶ 7, 88 P.3d 1050, 1056 (Wyo.2004) (*quoting Reiter v. State,* 2001 WY 116, ¶ 7, 36 P.3d 586, 589 (Wyo.2001)).

## DISCUSSION

[¶ 7] We will begin this discussion by noting first that the appellants have not challenged the validity of the adoption, itself. Moreover, the district court treated the complaint as seeking only a declaration that the visitation order survived the adoption decree. Consequently, our analysis will be limited to that issue—whether a prior grandparent visitation order survives the adoption of the child. The appellants' discovery and constitutionality arguments also will be considered with the same limitation.

[¶ 8] The appellants' first contention is that statutory grandparent visitation rights clearly are independent of the status or identity of the parents. The appellants see nothing in the statute suggesting that grandparent visitation rights are derivative of the grandparents' relationship with the parent; rather, the significant relationship is that with the child. And Wyo. Stat. Ann. § 20-7-101(d) provides that such rights, once granted, can only be revoked for good cause.

[¶ 9] Second, the appellants contend that interpretation of the adoption statutes as terminating their visitation rights with the child

would violate their right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and Wyo. Const. art. 1, § 6. The appellants' legal analysis is as follows: Constitutionally protected liberty interests may be created by state statute. *Vitek v. Jones,* 445 U.S. 480, 488, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). A person may not be deprived of a liberty interest without due process of law. *Bulova Watch Co. v. Zale Jewelry Co. of Cheyenne,* 371 P.2d 409, 417 (Wyo.1962). A statute that deprives a person of a liberty interest without due process is unconstitutional. *Holm v. State,* 404 P.2d 740, 743 (Wyo.1965). Consequently, the presumption that statutes are constitutional requires this Court to interpret the adoption statutes as protecting appellants' liberty interest in their visitation rights. *Scadden v. State,* 732 P.2d 1036, 1039 (Wyo.1987); *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932). And finally, the only way to protect those rights is to require that grandparents having an existing visitation order be given notice of adoption proceedings and an opportunity to be heard thereat. *In re Adoption of a Minor Child,* 593 So.2d 185, 189 (Fla.1991).[2]

[¶ 10] The appellants bolster these arguments with reference to *Michael v. Hertzler,* 900 P.2d 1144, 1149–51 (Wyo.1995), wherein this Court held that the state's compelling interest in fostering the relationship between a child and his or her grandparents does not invade the parents' fundamental right to raise the child, so long as all rights and interests are appropriately balanced. Indeed, the appellants contend that *Michael* stands for the proposition that "grandparent visitation rights, under Wyoming law, are rights that attach to the child and are of a magnitude that exceeds the fundamental rights of the parent."

[¶ 11] The appellants' final contentions are based directly upon the language of the statutes. They argue that the prohibition in Wyo. Stat. Ann. § 20–7–101 against grandparents obtaining a visitation order *after* an adoption takes place clearly implies legisla-tive intent that grandparent visitation orders obtained *before* adoption remain in effect. Furthermore, they suggest that one of the "obligations respecting the child" that adoptive parents take on under Wyo. Stat. Ann. § 1–22–114(a) is the obligation to honor existing grandparent visitation orders.

[¶ 12] The appellees' counter-arguments are as follows: Both the adoption statutes and the grandparent visitation statute are in derogation of common law and must, therefore, be strictly construed. *In re Estate of Kirkpatrick,* 2003 WY 125, ¶ 12, 77 P.3d 404, 407 (Wyo.2003); *Michael,* 900 P.2d at 1146; *State By and Through Dept. of Family Services v. Jennings,* 818 P.2d 1149, 1150 (Wyo. 1991); *Matter of Adoption of RDS,* 787 P.2d 968, 969 (Wyo.1990). In that regard, neither act allows or requires that grandparent visitation rights survive adoption. The appellees argue that, to the contrary, this Court has determined that all rights of the biological family to the child are severed by adoption. *In re Estate of Kirkpatrick,* 2003 WY 125, ¶¶ 12–17, 77 P.3d at 407–09.

[¶ 13] The appellees also contend that the appellants' due process arguments should not be considered by this Court because they were neither pled nor ruled upon below. *See Hoiness–LaBar Ins. v. Julien Const. Co.,* 743 P.2d 1262, 1268 (Wyo.1987) and *Walton v. Spinner,* 15 Wyo. 297, 89 P. 575, 575–76 (1907). This Court does not consider matters that were not raised below. *Davis v. City of Cheyenne,* 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo.2004). The appellees further argue that, if this Court does involve itself in due process issues, then it should find that it is the appellees' rights that would be violated by subjecting them to a grandparent visitation order from a proceeding to which they were not parties. *See Postal Telegraph Cable Co. v. City of Newport, Ky.,* 247 U.S. 464, 476, 38 S.Ct. 566, 62 L.Ed. 1215 (1918).

[¶ 14] The appellees' final argument is that *Michael,* upon which the appellants strongly rely for the proposition that grandparent visitation rights "trump" parental rights, may no longer be valid. *Michael,*

---

**2.** This analysis also supports the appellants' contention that they are entitled to discovery of documents relevant to the adoption proceedings.

published in 1995, construed a statute that limited grandparent visitation rights to three situations, in all of which there was a requirement that reasonable visitation had been refused: the grandparent's child who is the parent of the minor grandchild has died, or the grandparent's child who is the parent of the minor grandchild has divorced the minor grandchild's other parent, or an unmarried minor grandchild has resided with the grandparent for six months or more before being returned to the custody of the parents. *Michael*, 900 P.2d at 1145 (*quoting* Wyo. Stat. Ann. § 20–7–101 (1994)). In finding the statute constitutional, this Court specifically relied upon these "narrowly drawn" provisions. *Michael*, 900 P.2d at 1151. The statute was, however, amended in 1997 by the repeal of these limitations. Wyo. Sess. Laws ch. 71, § 2 (1997). And in 2000, the United States Supreme Court affirmed a state court decision that, due to a lack of limitations, its grandparent visitation statute was too broad and therefore interfered with the fundamental right of parents to rear their children. *Troxel v. Granville*, 530 U.S. 57, 73, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

[¶ 15] The appellants' and the appellees' conflicting positions must be resolved by determining legislative intent. It is, perhaps, stating the obvious to say that neither the adoption statutes nor the grandparent visitation statute overtly declares whether a grandparent visitation order is meant to survive a subsequent adoption. To fill this "gap in the statutory scheme," we must read the statutes *in pari materia*. *In re Estate of Kirkpatrick*, 2003 WY 125, ¶ 11, 77 P.3d at 407. Unfortunately, in doing so, we immediately are faced with the clash of two clear public policies: the state's desire to foster the interests of the child and the grandparents in grandparent visitation, and the state's desire to foster the interests of the child and the adoptive parents in the severing effect of adoption.

[¶ 16] This issue is far from being unique to Wyoming. There are literally dozens of reported cases in which state courts have struggled to reconcile these competing social policies. These cases are of little assistance to us because they are based on differing fact situations and differing statutes.[3] There are also numerous secondary sources that provide analyses of this case law.[4] Suffice it to

---

**3.** *See, for example, Ex parte D.W.*, 835 So.2d 186, 189–91 (Ala.2002) (statute specifically allows visitation after intrafamily adoption); *Matter of W.E.G.*, 710 P.2d 410, 414 (Alaska 1985) (adoption statute that terminates legal relationships of natural parents and other relatives does not allow for post-adoption grandparent visitation); *In re Petition of R.A.*, 66 P.3d 146, 150–51 (Colo. App.2002) (statutory scheme is constitutional that allows post-adoption grandparent visitation where grandchild's parent has died, but not where parental rights have been terminated); *Ramey v. Thomas*, 483 So.2d 747, 747 (Fla.App. 1986) (adoption statute that terminates legal relationships of natural parents and former relatives does not allow for post-adoption grandparent visitation); *Campbell v. Holcomb*, 193 Ga. App. 474, 388 S.E.2d 65, 66–67 (1989) (statute allows grandparent visitation after adoption by blood relatives of child); *In Interest of A.C.*, 428 N.W.2d 297, 300 (Iowa 1988) (stepparent adoption is only statutory exception to rule against post-adoption grandparent visitation); *Sowers v. Tsamolias*, 262 Kan. 717, 941 P.2d 949, 950–51 (1997) (adoption law has priority over grandparent visitation statute so that biological grandparent has no standing to petition for visitation after stranger adoption); *Hicks v. Enlow*, 764 S.W.2d 68, 71–73 (Ky.1989) (grandparent visitation rights, by statute, do not extend to any but stepparent adoption); *Preston v. Mercieri*, 133 N.H.

36, 573 A.2d 128, 132 (1990) (*parens patriae* doctrine permits courts to "judicially enlarge" grandparent visitation beyond statutory limits in best interests of child); *Matter of Adoption of Francisco A.*, 116 N.M. 708, 866 P.2d 1175, 1179 (1993) (trend is to allow post-adoption visitation with various people, such as grandparents, former stepparents, and foster parents if in best interests of child); and *Chavis v. Witt*, 285 S.C. 77, 328 S.E.2d 74, 75 (1985) (parent's consent to adoption terminates grandparents' visitation rights, but parent's death before adoption does not).

**4.** *See, for example,* George L. Blum, Annotation, 69 A.L.R.5th, *Grandparents' Visitation Rights Where Child's Parents Are Deceased, or Where Status of Parents Is Unspecified* § 5 (1999); 2 Am.Jur.2d, *Adoption* §§ 163–169 (2004); Chauncey Brummer & Era Looney, *Grandparent Rights In Custody, Adoption, and Visitation Cases*, 39 Ark. L.Rev. 259 (1985); Miriam B. Chaloff, Note, *Grandparents' Statutory Visitation Rights and the Rights of Adoptive Parents*, 49 Brooklyn L.Rev. 149 (1983); Cody L. Balzer, Note, *Grandparent Visitation Rights—Constitutional Considerations and the Need to Define the "Best Interest of the Child" Standard*, XXIX Land & Water L.Rev. 593 (1994); Robin L. Lewis, Note, *Grandparents Retain Visitation Privileges After Adoption: In re*

say that perhaps the only universal lesson to be learned from these cases is that both adoption and grandparent visitation are purely statutory creatures and, as such, their limits are to be found within the statutes.

[¶ 17] We will discuss a few specific cases as emblematic of the difficulty courts experience in attempting to reconcile conflicting social policies within a framework of statutory construction; in other words, reconciling without legislating. In *In re Adoption of Child by W.P.*, 163 N.J. 158, 748 A.2d 515, 518 (2000), the New Jersey Supreme Court found an "inherent conflict" between grandparent visitation and adoption, and held that the "overriding public policy" regarding adoptions precluded application of the grandparent visitation statutes in cases of adoption by "intact, nonrelative adoptive parents." The court opined that the grandparent visitation statute "must not be applied because court-enforced visitation by biological grandparents would discourage—if not prevent—adoption." *Id.* at 524. Further, "[a]n adoptive family must be given the right to grow and develop as an autonomous family, and must not be tied to the very relationship that put the child in the position of being adopted." *Id.* at 525.

[¶ 18] Two members of the New Jersey Supreme Court dissented in *In re Adoption of Child by W.P.*, on the ground that the common purpose of the two statutes—that being the best interests of children—meant they are compatible, and that nothing within the grandparent visitation statute specifically precluded its application in the case of stranger adoptions. *Id.* at 525, 530 (Poritz, C.J., dissenting). In support of its position, the dissent quoted from *Mimkon v. Ford*, 66 N.J. 426, 435–37, 332 A.2d 199 (1975):

> "It is biological fact that grandparents are bound to their grandchildren by the unbreakable links of heredity. It is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms.

A very special relationship often arises and continues between grandparents and grandchildren. The tensions and conflicts which commonly mar relations between parents and children are often absent between those very same parents and their grandchildren. Visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. Neither the Legislature nor this Court is blind to human truths which grandparents and grandchildren have always known."

*In re Adoption of Child by W.P.*, 748 A.2d at 531–32. No doubt, statutory construction is not always completely divorced from personal belief. *See Graziano v. Davis*, 50 Ohio App.2d 83, 361 N.E.2d 525, 529 (1976).

[¶ 19] A court's willingness to resolve conflicting policy issues may depend upon its willingness to fill statutory voids. In *L.F.M. v. Department of Social Services*, 67 Md.App. 379, 507 A.2d 1151, 1160 (1986), the court affirmed the dismissal of a petition for grandparent visitation because it had found no state statute *authorizing* such visitation in the particular circumstances before the court. The court in *Chavis v. Witt*, 285 S.C. 77, 328 S.E.2d 74, 75 (1985), to the contrary, affirmed the granting of a similar petition because it had found no state statute *precluding* such visitation. Needless to say, decisions based upon what cannot be found in a statute are not necessary where statutes directly answer the question. In *State ex rel. Brandon L. v. Moats*, 209 W.Va. 752, 551 S.E.2d 674, 677–78 (2001), the court's decision was based on a statute's provision that grandparent visitation is automatically terminated upon adoption unless the adoption is by a stepparent, grandparent, or other relative of the child. Likewise, in *People in Interest of N.S.*, 821 P.2d 931, 932 (Colo.App. 1991), the court readily denied grandparent visitation under a statute that excluded visi-

*Grandparental Visitation of C.G.F.*, 76 Marq. L.Rev. 651 (1993); Judy E. Nathan, Note, *Visitation After Adoption: In the Best Interests of the Child*, 59 N.Y.U. L.Rev. 633 (1984); Elaine D. Ingulli, *Grandparent Visitation Rights: Social*

*Policies and Legal Rights*, 87 W. Va. L.Rev. 295 (1984); and Patricia A. Hintz, *Grandparents' Visitation Rights Following Adoption: Expanding Traditional Boundaries in Wisconsin*, 1994 Wis. L.Rev. 483 (1994).

tation with "any child who has been placed for adoption or whose adoption has been legally finalized." Similarly, 9A South Dakota Codified Laws § 25–4–54 (1999 Revision) provides that grandparent visitation rights granted prior to adoption terminate upon placement for adoption with persons other than stepparents or grandparents. Unfortunately, we have no such clear guidance.

[¶ 20] The Supreme Court of Nebraska has reconciled that state's adoption and grandparent visitation statutes by looking first to the effect of the former upon the post-adoption rights of biological family members. In *Pier v. Bolles*, 257 Neb. 120, 596 N.W.2d 1, 5–6 (1999), the court found significant the fact that the statute explaining the rights of an adoptive family spoke in terms of the adoptive parents and their kindred, while the statute explaining the effect of adoption upon the biological family spoke only in terms of natural parents and did not mention kindred. The court concluded from this distinction that

> the explicit effect of §§ 43–110 and 43–111 is to provide that the adoptive parent and his or her kindred enjoy a new relationship to the child but that only the natural parents of the adoptive child are relieved of their duties to the child. The substance of § 43–111 was last amended in 1985. When the grandparent visitation statutes, which include a provision for visitation modification, became effective in 1986, the effect of adoption upon the natural parent and absence of explicit effect on the natural parent's "kindred" under § 43–111 were in place, and it is assumed that the Legislature was aware of and acquiesced in the law as it existed when it passed the new legislation pertaining to the same or a related subject matter.

*Pier*, 596 N.W.2d at 6.

[¶ 21] Next, the Nebraska court looked to the grandparent visitation statutes to determine the effect of adoption upon an existing visitation order. The court found particular significance in that act's modification provision.[5] *Id.* at 6–7. The court concluded:

> Grandparent visitation is statutorily derived. Unlike the provisions relative to grandparents seeking visitation in the first instance, nothing contained within the modification provisions of the grandparent visitation statutes makes the modification of previously ordered grandparent visitation dependent upon the parent's continued parental relationship with the child. Indeed, construing the adoption statutes and the grandparent visitation statutes in pari materia, we determine that by the grandparent visitation statutes' express provision of a method by which to modify previously ordered grandparent visitation, the Legislature intended that grandparent visitation granted under these statutes not be interrupted by the adoption statutes. Instead, the grandparent visitation statutes provide a two-step analysis by which the court, upon application, can determine on a case-by-case basis whether an order previously granting or denying grandparent visitation should be modified. Thus, following the adoption of the child, if the evidence shows that there has been a material change in circumstances justifying a change and the best interests of the child would be served, previously granted grandparent visitation can be modified, up to and including termination of grandparent visitation.

*Id.* These conclusions were affirmed a year later in *Raney v. Blecha*, 258 Neb. 731, 605 N.W.2d 449, 453 (2000), where the court made it clear that the adoptive family's remedy in the face of allegedly negative grandparent visitation, is to seek termination of that visitation by petitioning to have the visitation order modified or vacated.

[¶ 22] The question of the impact of adoption upon grandparent visitation rights extends to the two-tiered issue of whether a grandparent with an existing visitation order is entitled to notice of adoption proceedings and, if so, whether the grandparent is entitled to object to the adoption. Those ques-

---

5. "The court may modify an order granting or denying such visitation upon a showing that there has been a material change in circumstances which justifies such modification and that the modification would serve the best interests of the child." Neb.Rev.Stat. § 43–1802(3) (Reissue 2004).

tions were recently addressed in a Mississippi case with facts similar to those presently before this Court. In *In re Adoption of J.J.G.*, 736 So.2d 1037, 1037 (Miss.1999), the parents consented to an adoption by the paternal grandmother. The maternal grandparents filed an objection to the adoption on the ground that it was merely an attempt to defeat their petition for visitation rights. *Id.* The court held that, where both parents were adults and both had consented to the adoption, there was no statutory authority for a grandparent to object to the adoption and, therefore, the grandparents had no standing. *Id.* at 1040. Two justices dissented on the ground that the grandparents had a sufficient interest in visitation to enable them, under general intervention principles, to intervene in the adoption, even if that interest was not sufficient to require notice of the adoption proceedings. *Id.* at 1040 (Banks, J., dissenting). The dissenting justices further contended that, by statute, the grandparents' standing to pursue visitation was not cut off by adoption unless the adoption was by a non-relative. *Id.* at 1041–42.

[¶ 23] In *Puleo v. Forgue*, 610 A.2d 124 (R.I.1992), the Rhode Island Supreme Court, with scarcely any citation to authority, reached a conclusion meshing the rationales and conclusions of *Pier* and *Raney*, and both the majority and dissenting opinions from *In re Adoption of J.J.G.* The *Puleo* court held that Rhode Island's adoption statutes do not extend standing to grandparents to contest an adoption, that adoption proceedings do not affect existing grandparent visitation orders, and that, therefore, grandparents have no right to notice of adoption proceedings. *Id.* at 125–26. Finally, the court concluded that the provisions in the grandparent visitation statutes for notice to grandparents of a "change in custody or visitation" indicated that "[t]he Legislature, in providing for a notice of a change in circumstances that would affect the visitation, made it clear that the visitation rights would survive an adoption." *Id.* at 126.

[¶ 24] We have struggled with these same issues within our own jurisprudence, although not under precisely the same fact situation as is presently before this Court.

We have twice directly held that adoption terminates the legal relationships between the biological family and the adopted child. In*Matter of Adoption of RDS*, 787 P.2d at 970–71, we held that adoption cut off both the mother's and the grandmother's visitation rights:

> We hold as a matter of public policy that any agreement, whether it was oral or in writing or whether it was included within the terms of an adoption decree, would not give [the grandmother] a right to visitation with RDS. To the extent the existence of any such agreement permitting her to visit with RDS could be proved, it would be void and unenforceable as violative of public policy.

In reaching that conclusion, we quoted from *Poe v. Case*, 263 Ark. 488, 565 S.W.2d 612, 614 (1978):

> "A decree attempting to grant visitation rights to a natural grandparent as an incident to an adoption or to enforce a grandparent's visitation rights granted before the adoption, without specific statutory authority, is surplusage, void and separable from the remainder of the decree."

*Matter of the Adoption of RDS*, 787 P.2d at 970. *Poe* was reaffirmed in *Wilson v. Wallace*, 274 Ark. 48, 622 S.W.2d 164, 166 (1981), where the Arkansas Supreme Court stated:

> It was unquestionably within the province of the legislature to decide that the reasons favoring the solidarity of the adoptive family outweigh those favoring grandparents and other blood kin who are related to the child. . . . The final decision as to the state's policy lay with the legislature, not with the courts.

*See also Vice v. Andrews*, 328 Ark. 573, 945 S.W.2d 914, 915 (1997) (statute reflects public policy favoring complete severance of relationship between adopted child and biological family) and *In re Custody of B.S.Z.-S*, 74 Wash.App. 727, 875 P.2d 693, 696 (1994) (up to legislature to specify if biological grandparents are to have continued relationship after adoption of child).

[¶ 25] We reached a similar conclusion in *In re Estate of Kirkpatrick*, 2003 WY 125, ¶¶ 12–17, 77 P.3d at 407–09, which case involved the inheritance rights of siblings:

Since adoption was not considered at common law, we must strictly construe adoption statutes. *JK ex rel. DK v. MK,* 5 P.3d 782 (Wyo.2000). Strict construction of Wyoming's adoption statutes suggests that the legislature ultimately intended for adoption to sever all rights of the biological family members....

. . .

The adoption decree severs the relationship between the child and his biological parents and creates a new and exclusive parent-child relationship between the child and the adoptive parents. This Court has recognized the import of the severance from the biological parents and the new unity with the adoptive parents: "A decree of adoption tears asunder forever the parent-child relationship and for all legal and practical purposes, that child is the same as dead to the parent affected. The parent has lost the right to ever again see the child or even know of his whereabouts." *Voss v. Ralston,* 550 P.2d 481, 485 (Wyo. 1976). A New York case extends this view logically:

> "Although there is nothing in the adoption law that says that rights between the adopted child and his natural brothers and sisters have been terminated or destroyed, nevertheless, when the natural parents relinquished their rights, the foundation or substructure which joined the blood relatives with the adopted child was removed. Therefore, natural blood relatives who must trace their relationship through a natural parent *may not inherit or take from the adopted [child]*."

*In re Accounting of Fodor (Estate of Adler),* 202 Misc. 1100, 117 N.Y.S.2d 331, 334 (N.Y.1952) (emphasis added) (citations omitted).

> "When a child is given up for adoption, his natural parents have, in effect, destroyed the mythical cord which nature provided to bind them with the child, and the adoption has the effect of *excluding the natural parents and all the natural kindred and blood relatives of the child from inheriting from the adopted child.*"

*Id.* at 333 (emphasis added) (citations omitted).

The preceding cases are consistent with settled principles of Wyoming law regarding severing the legal relationship between adopted children and their biological parents.... [T]he principle of an adopted child being legally severed from the biological family has remained steadfast throughout our jurisprudence. An adopted child cannot live in limbo, nor can his adoptive or biological family, after the adoption is finalized. Moreover, to say that adoption severs previously existing rights of inheritance in some members of the biological family but not others would be against public policy. Adoption severs all rights of biological family members, including their right to inherit from the adopted child.

[¶ 26] These principles are as true of visitation rights as they are of inheritance rights. Adoption would be a strange status, indeed, if the only biological family members cut off from the adoptee were his or her parents. In addition, the entire statutory adoption structure would be rendered nugatory by an interpretation that gave grandparents a right to be notified of an adoption, and that allowed grandparents to contest an adoption, or an interpretation that allowed grandparent visitation to survive an adoption. Adoption proceedings are closed, adoption files are confidential, the only parties to an adoption are those whose consent is required—which does not include grandparents—and the statutes do not provide for a decree containing biological family visitation. In short, the adoption statutes unambiguously do not provide for biological grandparent intervention in adoption proceedings, nor for biological grandparent contesting of adoptions, nor for visitation after adoption. *See In re Marriage of A.S.A.,* 931 S.W.2d 218, 225 (Mo.App.1996); *State ex rel. T.W.N. v. Kehm,* 787 S.W.2d 728, 732 (Mo.App.1989); and *In re Adoption of Ridenour,* 61 Ohio St.3d 319, 574 N.E.2d 1055, 1063–64 (1991).

[¶ 27] In *Matter of Voss' Adoption,* 550 P.2d 481, 485 (Wyo.1976), we reiterated in an adoption context that courts are not free to legislate under the guise of interpretation of statutes, and that "it is just as important to

recognize what a statute does not say as it is to recognize what it does say." In that regard, we just cannot find anything in the adoption statutes that suggests that grandparent visitation rights survive adoption of the child. And, without legislating, we cannot follow the practice of some courts of distinguishing between relative and stepparent adoptions, on the one hand, and non-relative adoptions, on the other, where our state's adoption statutes make no such distinctions. The Wyoming adoption statutes simply do not provide that grandparent visitation orders survive adoption by another relative.

[¶ 28] We are left with the question of whether the grandparent visitation statute, if not the adoption statutes, allows grandparent visitation after adoption or whether it creates an ambiguity in that regard. Unlike the courts in *Pier, Raney,* and *Puleo,* we find nothing in the revocation and modification provisions of Wyo. Stat. Ann. § 20–7–101(d) that suggests that, because grandparent visitation rights may be revoked or modified, the legislature must have intended for grandparent visitation orders to survive adoption. Besides being unable to follow the logic of that reasoning, we are constrained by the rule of strict construction that disallows such speculation. In addition, revocation or modification under the statute unambiguously is reserved for "any action or proceeding in which visitation rights have been granted...." Wyo. Stat. Ann. § 20–7–101(d). We made it clear in *Nation v. Nation,* 715 P.2d 198, 207–08 (Wyo.1986), that an independent action is appropriate for establishing grandparent visitation rights, and that intervention in a divorce action may be appropriate. It follows that revocation or modification of grandparent visitation, as anticipated by Wyo. Stat. Ann. § 20–7–101(d), is limited to those court proceedings in which it was created. We cannot write into that statute a provision that future adoptive parents are to become parties to those proceedings, just as we cannot write into the adoption statutes that visitation may be pursued within an adoption proceeding. Neither is provided for by statute.

[¶ 29] There is one section of the grandparent visitation statute that does directly reflect legislative intent as to the effect of adoption on grandparent visitation. Wyo. Stat. Ann. § 20–7–101(c) reads as follows: "No action to establish visitation rights may be brought by a grandparent under subsection (a) of this section if the minor grandchild has been adopted and neither adopting parent is a natural parent of the child." Restated, the section provides that an action to establish visitation rights with an adopted grandchild may only be brought by a grandparent if one of the biological parents has retained parental rights and the child has been adopted by a stepparent. That situation could occur where one parent dies and the other later remarries. Less commonly, it could occur where the parents divorce, one later remarries, and the other relinquishes custody of the child and consents to adoption, or the other has his or her rights terminated by court order.

[¶ 30] We are unable to discern from the legislature's authorization of grandparent visitation in this limited circumstance any generalized intent that grandparent visitation rights ordered prior to an adoption are meant to survive the adoption in different circumstances. When Wyo. Stat. Ann. § 20–7–101(d) was passed, the legislature clearly had in mind the potential conflict between adoption and grandparent visitation rights. The only situation in which the legislature chose to provide for visitation between a biological grandparent and an adopted grandchild was adoption by a stepparent. Had the right to grandparent visitation been meant to survive where a grandparent adopts the child, such easily could have been provided. We find it significant that stepparent adoption is stated as an exception to the general rule that grandparent visitation cannot be ordered after adoption. Furthermore, we have been shown no compelling distinction between grandparent visitation rights that were ordered pre-adoption and those sought after adoption. The relationship between the child and the grandparent is exactly the same in either case and the potential interference with the adoptive family also is exactly the same.

[¶ 31]   While neither adoption nor grandparental visitation existed at common law, the former has been statutorily recognized for much longer than has the latter.   There is very little difference between today's Wyo. Stat. Ann. § 1–22–114, set forth earlier herein, and Section 3018 (R.S. 1899), which stated:

Upon the approval of said court or judge being obtained as aforesaid, the parent or guardian of such minor child shall cease to have any control whatever over the person of such child so relinquished, or right to reclaim the same; and the person adopting such child shall exercise all the rights of a parent the same as if such child was the legitimate offspring of such person, and shall be subject to all the liabilities incident to that relation.

Adoption has a long and hallowed tradition in Wyoming law.   We said in *In re Adoption of MM*, 652 P.2d 974, 978 (Wyo.1982) that:

there is splendor in adoption of children in appropriate cases.   It affords in so many instances a future in every respect which a child may not otherwise enjoy.   It fills a void for those not blessed as natural parents and those others who also have the capability and overwhelming desire to care for and raise the helpless.   They, too, must not be deprived when they take a lawful, sincere, caring, and good faith course, especially when they have been committed to and are willing to assume or have assumed parental responsibilities.

We do not mean to denigrate the love of a grandparent for a grandchild.   But neither can we, through loose construction of statutes, overturn more than a century of rever-

ence for the sanctity of the adoptive relationship.   If the legislature intended to breach the closed doors of the adoption courtroom and the confidentiality of the adoption file, and intended to alter the historic relationship of adoptive parent and child, we are convinced that it would have done so clearly and directly.   We hold that neither the grandparent visitation statute nor the adoption statutes allow for the grandparent visitation order to survive the adoption of the child in this case.[6]

[¶ 32]   We have concluded that neither the adoption statutes nor the grandparent visitation statute confer standing upon grandparents to contest an adoption petition or even to receive notice of such.   There remains, however, the question of whether an existing grandparent visitation order creates a constitutionally protected liberty interest that may not be extinguished without due process of law; that is, notice and an opportunity to be heard.[7]   The appellants rely upon *In re Adoption of a Minor Child*, 593 So.2d at 189, where the Florida Supreme Court held that, even where notice to grandparents was not statutorily required, Florida's constitution required notice of an adoption petition be given to grandparents with court-ordered visitation rights.[8]   This view is not universal.   Most courts do seem to agree, however, that the answer must be sought by determining the nature of the right.

[¶ 33]   In *In re Marriage of Herreras*, 159 Ariz. 511, 768 P.2d 673, 674 (1989), the court contrasted grandparent visitation rights and parental rights:

could contest the adoption, although the only post-adoption remedy would be to vacate the adoption order.   *In re Adoption of a Minor Child*, 593 So.2d at 189–90.   In a similar situation, the Arkansas Supreme Court held that "grandparents who have been granted [statutory] visitation rights ... have an interest in adoption proceedings sufficient to entitle them to intervene for the limited purpose of offering such evidence as may be relevant to the issue of whether the proposed adoption is in the best interest of the child." *Brown v. Meekins*, 278 Ark. 67, 643 S.W.2d 553, 554 (1982).

---

6.   For a similar holding, albeit in a non-relative adoption situation, and for a good discussion of the problems resulting from post-adoption visitation, *see In re Adoption of Ridenour*, 574 N.E.2d at 1057–62.

7.   We will address the constitutional issue even though the district court's decision did not directly do so.   The appellants raised the question of due process below in their complaint, in their summary judgment motion, and in their legal memorandum.   The district court ruling had the effect of denying the constitutional claim.

8.   The Florida court did not clearly state whether intervention was for the limited purpose of preserving visitation or whether the grandparents

Appellant argues that automatic termination [of grandparent visitation rights by an adoption of the grandchild] violates due process of law, citing three cases that deal with the taking of liberty or property without due process of law. As we stated in *Sands [v. Sands,* 157 Ariz. 322, 757 P.2d 126 (Ariz.App.1988) ], prior to the enactment of the grandparent visitation laws, grandparents had no legal right to visit with their grandchildren. At common law, such rights were derived through the natural parents. *In re Adoption of a Child by M.,* 140 N.J.Super. 91, 355 A.2d 211 (1976). A parent-child relationship has been recognized as "a personal right deserving of due process protection." *Matter of Appeal in Pima County Juvenile Action No. S–933,* 135 Ariz. 278, 279, 660 P.2d 1205, 1206 (1982). A parent's right to custody and control of one's own children is fundamental and is protected by due process. *Matter of Maricopa County Juvenile Action No. JD–561,* 131 Ariz. 25, 638 P.2d 692 (1981). The Arizona courts, however, have not recognized the grandparental relationship as an interest or right which is entitled to protection except in the limited manner provided by the statute at issue. Moreover, public policy requires recognition that an adoption decree creates a set of new relationships with the adoptive parents and that old ties must be broken. *Browning v. Tarwater,* 215 Kan. 501, 524 P.2d 1135 (1974).

[¶ 34] In *Faust v. Messinger,* 345 Pa.Super. 155, 497 A.2d 1351, 1353 (1985), the Superior Court of Pennsylvania held that statutory grandparent visitation rights do not rise to the level of a constitutionally protected liberty interest, regardless of whether a visitation order has been entered:

[T]he entitlement claimed by appellant does not amount to one which must be protected by the due process clause. It is an entitlement only to *seek* visitation which will be granted or denied as the best interests of the child dictate, 23 P.S. §§ 1012, 1014. Prior to his adoption, while the statute entitled her to do so, appellant

did not institute an action for visitation of her grandson, nor does she explain her failure to do so.

Even if she had obtained a visitation order prior to the adoption proceeding, however, she would stand in the same position. Under the CGVA, both the incipient right to seek visitation and any visitation rights already established by court order are extinguished upon the adoption of the child, 23 P.S. § 1015. Such evanescent rights, first protected by statute in 1982, 23 P.S. § 1001 *et seq.,* are not ones which activate the procedural protections of the due process clause. The limited, transitory nature of grandparental visitation privileges set forth in the statute convinces us that the privileges may properly be terminated in an adoption, just as all familial ties between an adoptee and other blood relatives are severed, without notice and without hearing.

(Footnote omitted and emphasis in original.) [9]

[¶ 35] Some courts, while following the principle that statutory grandparent visitation rights do not rise to the level of constitutionally protected liberty interests, make an exception where the grandparent has had actual custody of the child. A clear statement of that position is found in *L.F.M.,* 507 A.2d at 1154–55 (footnotes omitted):

We view appellants' first two arguments as essentially the same. They contend that, as grandparents, they have a constitutionally protected right under the due process clause of the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights to visit their grandchildren; and that, therefore, they were entitled to notice and an opportunity to be heard before their grandchildren were placed under the guardianship of BCDSS with the right to consent to their adoption. They claim that Md.Code Ann., Fam. Law, § 5–322 (1984) is unconstitutional because it fails to require that notice of state action be given to

---

9. In *Suroviec v. Mitchell,* 347 Pa.Super. 399, 500 A.2d 894, 896 (1985), the court held that the statement in *Faust* that adoption decrees termi-

nate grandparent visitation rights regardless of their basis did not apply to stepparent adoptions.

them, as grandparents who had been exercising their grandparental right of visitation. We disagree.

Appellants assert that "[a]bsent abuse or parental objection, the right to maintain a relationship of love with one's flesh and blood, whether the ... love of a parent for a child or ... grandparental love of a grandchild, is firmly recognized in Maryland law." Appellants cite no authority for this proposition, and we have found none. Indeed, implicit in that very statement is the recognition that the source of grandparental visitation is parental permission, and this had been the historical rule. At common law, grandparents had no legal right to visit or communicate with their grandchildren if to do so was forbidden by the parents. *See* 59 Am.Jur.2nd, *Parent and Child* § 92. While it appears that prior to the termination of their parental rights, C.W. and G.W. had not objected to visitation between the appellants and their children, once their parental rights had been terminated the parents were no longer in a position to grant "visitation rights" to the appellants.

We do not question the sincerity or the depth of the affection that appellants feel for their grandchildren. That affection, however, simply does not translate into a constitutionally protected liberty interest. It is true that "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974) (citations omitted). This "family life" liberty interest has been recognized most frequently within the context of husband-wife or parent-child relationships. *E.g., Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1962); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). In some cases the "family life" interest has been recog-

nized in relationships other than those of husband-wife or parent-child. *See, e.g., Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (a grandmother and two grandsons); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 [ (1944) ] (an aunt and her niece). The United States Supreme Court, in a decision regarding the rights of foster parents, has suggested that foster parents may have a limited constitutional "liberty" interest in the foster family. *Smith v. Offer,* 431 U.S. 816, 843–46, 97 S.Ct. 2094, 2109–10, 53 L.Ed.2d 14 (1977). In each of the cases we have examined, however, which extended the "family life" liberty interest beyond the marital or parent-child relationship, the petitioning party had had, at some point, either actual or legal custody of the child or children involved. Appellants in this case have never had, or sought, custody of their grandchildren. They seek only to continue visitation with them and we have found no authority to suggest that the visitation appellants enjoyed prior to May 1, 1984, was a constitutionally protected liberty interest.

Because appellants lack a constitutionally protected liberty interest in visitation with their grandchildren, we hold that Family Law § 5–322 is not unconstitutional in that it failed to require that notice of the pending guardianship proceeding be given to them.

In a similar holding a year later, the Delaware Family Court further described these principles in *Ward v. Ward,* 537 A.2d 1063, 1066–69 (Del.Fam.Ct.1987) (emphasis in original):

In order to invoke the protection of the due process clause a party must claim an interest which is one of constitutional dimensions. In other words, the right which they assert in this case, the right to associate with their grandchildren through visitation, must be one which is generally recognized as a right protected by the Constitution....

. . .

... [G]randparents had no common-law right to visitation, their rights being derivative through the natural parent. The

parents' obligation to allow visitation with the grandparent was characterized as a moral, not a legal, obligation....

In recent years, however, the grandparent-grandchild relationship has received increasing attention from both state legislatures and the courts which, petitioners suggest, indicate that the relationship is one which should be given constitutional protection....

. . .

A review of applicable case law also reveals that, on occasion, courts have found grandparents to have a constitutionally protected interest in their grandchildren.

. . .

A careful reading of these cases shows, however, that the constitutionally protected interest asserted by the grandparents developed out of what was in effect a custodial relationship with the grandchildren, in which the grandparents had undertaken responsibility for the day to day care and nurturing of the children.

This suggests that any liberty interest exists only where the grandparent-grandchild relationship is essentially a custodial one. This is not the situation here, where petitioners seek a relationship through periodic visitation.

Other authorities support this view and also indicate that, even where a liberty interest exists in the grandparents, the interest becomes substantially attenuated, if not nullified, when the interests of the child's parents are in conflict with it.

. . .

In summary, in order to invoke the protection of the Fourteenth Amendment to the United States Constitution, petitioners bear the burden of demonstrating that a constitutionally recognized interest is at issue. This they have failed to do. The "right" to grandparent visitation is not one "long recognized at commonlaw as essential to the orderly pursuit of happiness of free men." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). Further, any liberty interest in the

preservation of the family unit is not bestowed by virtue of the assertion of a biological link to the child. *See, Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); *Petitioner F. v. Respondent R.,* Del.Supr., 430 A.2d 1075 (1985). Rather, it arises from "the emotional attachments that derive from the intimacy of *daily association, and* from the role [the family] plays in promoting a way of life *through the instruction of children* ". *Wisconsin v. Yoder,* 406 U.S. 205, 231–33, 92 S.Ct. 1526, 1541, 1542, 32 L.Ed.2d 15 (1972). This interest does not exist where the relationship is one where the contact is less immediate, and sustained only through periodic visitation.

Even should this court decide to recognize such an interest, that interest must bow to the fundamental liberty interest of the parents in raising their children as they see fit.

Accordingly, petitioners assert no constitutionally protected right and this denial of judicial access in these circumstances cannot be classified as a denial of due process to the grandparents.

*See also Kennedy v. Kennedy,* 688 N.E.2d 1264, 1268–69 (Ind.App.1997) (constitutionally protected liberty interest exists only where grandparent-grandchild relationship is essentially a custodial one).

[¶ 36] We find this reasoning persuasive. It is true that liberty interests may be created by state statute, but that does not mean that every interest created by state statute is a constitutionally protected liberty interest. The rights created by the grandparent visitation statute, while significant to both grandparent and grandchild, are statutorily constricted, are transitory, and are not the equivalent of a custodial relationship.[10] The very fact that neither the adoption statutes nor the grandparent visitation statute specifies that grandparent visitation orders survive adoption of the grandchild, coupled with the fact that the adoption statutes were not amended so as to provide for notice to grandparents or to provide that grandparents be

10. We do not now decide, because the issue is not before us, whether facts more nearly resembling custody may create a constitutionally protected liberty interest.

made parties to an adoption, indicates the legislature's intent that grandparent visitation rights terminate upon adoption, just as the rights of any other biological family member.

[¶ 37] These conclusions do not contradict what we said in *Michael.* To begin with, *Michael* involved the due process rights of parents when confronted with grandparent visitation, not vice versa. Second, *Michael* did not consider the public policy ramifications of the adoption statutes; in other words, the severing effect of adoption was not involved. And third, we found the grandparent visitation statute constitutional based upon its specific limitation to particular situations.

■ [¶ 38] Some courts and legislatures see less reason to vacate biological grandparent visitation rights upon adoption of the grandchild by a stepparent, grandparent, or other family member. In those situations, complete separation of the child from his biological relatives is not likely, as a factual matter. However, there is nothing within either the adoption statutes or the grandparent visitation statute that allows this Court to make such distinctions. If we remain true to the principle of strict construction of statutes that are in derogation of the common law, we cannot create exceptions to the effect of adoption. Furthermore, *stare decisis* requires us to state once again that adoption cuts off *all* ties between the adopted child and his biological family. *In re Estate of Kirkpatrick,* 2003 WY 125, ¶¶ 12–17, 77 P.3d at 407–09; *Matter of Adoption of R.D.S.,* 787 P.2d at 970–71.

## CONCLUSION

[¶ 39] Wyoming's century-old adoption statutes have been authoritatively interpreted by this Court to extinguish all legal relationships between an adopted child and his or her biological family. The legislature's subsequent passage of a grandparent visitation statute that contains no statement, explicit or implicit, of an intention to create a general grandparent exception to that rule has not, through silence, created an ambiguity in that regard. Indeed, the statute reveals that the legislature knew how to make an exception to

the severing effect of adoption because it did so for stepparent adoptions. The appellants have no statutory right to continued visitation with their grandchild.

[¶ 40] Grandparent visitation rights did not exist at common law, and exist now only to whatever limited extent is allowed by statute. Because the legislature did not provide that grandparent visitation rights survive adoption of a grandchild under the circumstances of the present case—that is, adoption by grandparents—such rights are limited and terminable without notice, and, therefore, do not rise to the magnitude of constitutionally protected liberty interests.

[¶ 41] We affirm the judgment of the district court.

HILL, Chief Justice, dissenting.

[¶ 42] I respectfully dissent because the circumstances of this case simply cannot be forced into the procrustean framework the district court and the majority here have assembled.

[¶ 43] Wyoming's adoption statutes clearly establish that the foremost aspiration of the adoption process is the best interests and welfare of the child. Wyo. Stat. Ann. § 1–22–111 (LexisNexis 2003); *and see* 1 Joan Heifetz Hollinger, et al., *Adoption Law and Practice,* § 1.01[1] ("The guiding principle of adoption is to promote the welfare of children, as well as to serve the interests of biological parents, adoptive parents and the state.") (1988 and Supp.2003). The record reflects that the child at issue was born on January 31, 1997, and has had a relationship with her paternal grandparents until recently. The child's father consented to the termination of his parental rights and to the adoption. Mother also consented to the adoption, thus terminating her own rights to the child. However, the adoptive parents are her parents and, thus, her child is now her sibling. The maternal grandparents, now parents, refuse to honor grandparental visitation rights that were accorded to paternal grandparents after a long and bitter struggle with the child's biological mother.

[¶ 44] As is evident from the majority opinion, the caption of this case, as well as the mere realities of this litigation, confidentiality is not of any particular concern here, because the adoptive parents are well known to all parties who have an interest in this matter. *See generally* 3 Joan Heifetz Hollinger, et al., *Adoption Law and Practice*, § 13.01[1][c] ("Changing Views About Confidentiality and Anonymity") (1988 and Supp. 1989).

[¶ 45] Clearly the adoption statutes did not contemplate a situation such as this, the advent of grandparents' rights to visitation, or the permutations of family relationships in the 21st century. In this context, it should be noted that the "permutations" are not so much a reflection of declining morals, as it is a function of an ever-growing attentiveness to the needs of children. Wyoming's adoption statutes were first put in place in 1876, and though they have been amended many times in the intervening years, it appears that change has been reactive rather than proactive. The circumstances of this case require us to put aside the artificial barriers of statutory construction. The principles valued by the customs of adoption and the principles at the core of grandparental visitation can coexist quite readily so long as, in the process of interpreting them both, we do not lose sight of the ultimate goal—the best interests of the affected child.

[¶ 46] There is rational authority to assist the courts in a process such as this, without doing violence to either the adoption statutes or the grandparent visitation statutes. It is well summarized in 3 Joan Heifetz Hollinger, et al., *supra*, § 13.03, at 13–81, ("Post–Adoption Contact with Grandparents") (1988); and *see Beckman v. Boggs*, 337 Md. 688, 655 A.2d 901 (Md.1995) (adoption by maternal grandparents did not extinguish paternal grandparents rights to petition for visitation).

[¶ 47] Here, it is apparent that the child has an established relationship with the paternal grandparents. The paternal grandparents were awarded a right to visitation with the child, prior to the adoption. The adoptive parents are the maternal grandparents, and the limited record available to us suggests that the adoption was designed, at least in part, to frustrate the relationship between the child and her paternal grandparents. Based on the authority noted above, I would reverse and remand to the district court for a hearing on whether continued visitation with the paternal grandparents is in the best interests of the child.